**ADELBERT M. BRYAN, Plaintiff**

**v.**

**JOHN ABRAMSON, JR., SUPERVISOR OF ELECTION AND THE JOINT BOARD OF ELECTIONS and GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

Case No. SX-10-CV-363

Superior Court of the Virgin Islands

Division of St. Croix

October 14, 2010

BRADY, *Judge*

## MEMORANDUM OPINION AND ORDER

(October 14, 2010)

THIS MATTER is before the Court on Plaintiff's Complaint, alleging his right to use a paper ballot instead of the electronic voting machines; Plaintiff's "Motion And Memorandum Of Law In Support Of Preliminary Injunction And An Emergency Ex Parte Temporary Restraining Order"; Defendants' Opposition thereto and Motion to Dismiss. The matter came on for Hearing on September 7, 2010. For the reasons set forth herein, Plaintiffs request for a Preliminary Injunction and Temporary Restraining Order regarding the general election of November 2, 2010, will be denied.

### Preamble

The first case in the Virgin Islands addressing the right to vote (for members of the Colonial Council for Frederiksted Town and Country Districts) was decided on April 15, 1936 by the District Court of the Virgin Islands, Judge Levitt presiding. The petition was filed by a group of women resident in the Town of Frederiksted against the Electoral Board which had refused to recognize them as eligible voters because of their gender. The Judge ordered the Board to include their names on the voters' list citing the Constitution of the United States — specifically the Nineteenth Amendment — which extended suffrage to women in America. Even though existing Danish laws (Amalienborg Code of 1906) restricted the right to vote to males only, Judge Levitt ruled that the 19th Amendment was equally applicable to female citizens of the United States Virgin Islands. *Richardson v. Electoral Boards*, 1 V.I. 301 (D. V.I. 1936).[1]

---

[1] Judge Levitt in reaching his conclusion that women were eligible to vote had to explore and reconcile pre-transfer Danish and American rules and laws and is, in this Court's opinion, a study in legalistic deductive reasoning.

While this "gift" of universal suffrage was not bestowed by our American sovereign until nineteen (19) years after the transfer from Denmark, it marked the beginning of one of our most cherished and enthusiastic exercised traditions of electing our governmental officials.

The first Municipal Council elections in 1938 when the masses could cast their votes was only the start of the self governance that we take for granted today when we select a Governor, Lieutenant Governor, Delegate to Congress, fifteen (15) Senators and Boards of Elections and Education. The case now before the Court presents a challenge to the election system that has been in place since 1986.

## FACTUAL BACKGROUND

On August 17, 2010 Plaintiff filed a Complaint alleging that he has "the legal choice of using paper ballots or the electronic voting machines pursuant to relative laws." Complaint, ¶ 12, p. 2. In essence, Plaintiff claims that he is entitled by law to the use of paper ballots as a means of voting instead of the electronic machine. Indeed, Plaintiff claims that "the use of ballots and ballot boxes are still present and available in 18 V.I.C. and have not been repealed." In his "Motion And Memorandum Of Law In Support Of Preliminary Injunction And An Emergency Ex Parte Temporary Restraining Order," Plaintiff explicitly sets forth his theories of his claims. In his Motion Plaintiff cites the Help America Vote Act (HAVA) of 2002, as well as specific sections of Title 18 of the Virgin Islands Code which govern all elections in this Territory (specifically, primary and general elections and referenda). The Court quotes from the relevant portions of Plaintiff's Motion And Memorandum Of Law:

"Plaintiff and thousands of electors have the legal choice of using paper ballots or the electronic voting machines pursuant to relative laws pursuant to 514, 515, 516, 517 and 261 to include HAVA 2002." *Id.* at 5, ¶ 22.

"The use of ballots and ballot boxes are still present and available in 18 V.I.C. and have not been repealed to include 18 V.I.C. § 581." *Id.* at 5, ¶ 26.

"Plaintiff and others have made it known to defendants and others via public radio talk shows of our intentions to vote with the use of the official paper ballots or unofficial ballots pursuant to 18 V.I.C. § 553, 554, 581, 582 and 261." *Id.* at 5, ¶ 29.

6

"18 V.I.C. provides for the use of paper ballots and ballot boxes amongst other official instruments and documents to be delivered at all polling districts and polling places. The defendants arbitrarily, capriciously and discriminatorily agreed to influence, persuade, intimidate or coerce plaintiff and others to use a provisional ballot rather than the electronic voting machines, as adopted as one of the choice to register a voter's choice, will or preference to manifest his/her vote pursuant to 18 V.I.C." *Id.* at 5-6, ¶ 30.

In our republican form of government, consisting of three (3) co-equal branches, responsibilities and powers are distinctly divided and expressly limited. The Legislature enacts laws and appropriates funding for all three (3) Branches of Government; the Executive implements the laws and manages the functions of government through its Departments, Agencies, Boards and Commissions. The Judiciary in this Territory consists of individuals nominated by the Governor and confirmed by a majority of Senators in the Legislature. We now have Magistrates[2] and Judges of the Superior Court and, since 2006, Justices of the Supreme Court who are the final arbiters of all appeals in the Territory.

In this particular case this Court must decide — based on the current and applicable law — the respective rights and authority of the Parties. The Plaintiff asserts that it is his right under law to use an "official paper ballot or unoffical ballot" in voting in the general election in November, 2010.

The Defendants contend to the contrary and rely upon the Election Reform Act of 1984, 18 V.I.C. § 1, *et seq.*,[3] the Rules And Regulations For The Administration Of Provisional Balloting[4] and the Rules and Regulations adopted and promulgated by the Joint Boards of Elections.

## DISCUSSION

While the Fifteenth Legislature mandated the use of electronic voting machines in 1984 for all elections and referenda, it was not until the general election of 1986 that the transition — from individual paper

---

[2] Magistrates of the Superior Court are appointed by the Presiding Judge with the consent of a majority of Associate Judges.

[3] Enacted by the Legislature on May 3, 1984, Act No. 4934, Section 9(a), Sess. L. 1984, p. 118.

[4] Adopted by the Supervisor of Elections on February 27, 2004.

ballots deposited in ballot boxes to electronic machines which record the voters' preferences of candidates or referenda issues — was implemented. In creating a new voting system, the Legislature was very explicit in prescribing specific standards and procedures including checks, re-checks and balances for implementing the use of electronic voting machines for all elections in our Territory. The Court will either summarize or reproduce verbatim the relevant existing law regarding elections in the Virgin Islands.

Title 18 of the Virgin Islands Code codifies the elections laws of the Virgin Islands. Indeed, sections 501 to 507 set forth the design of the "ballots" for election of candidates, including such minutia as how to shorten the names of candidates whose complete names contain more than twenty-two (22) letters; mandate that the voting machines contain "yes" and "no" buttons; make it incumbent on the Supervisor of Elections to provide public displays of sample ballots and to instruct the public on the "use" of the voting machines; and directs the Supervisor of Elections and each Board of Elections to put the machines on public display and provide the public with opportunities to utilize the machines through facsimile and sample ballots. Moreover, the Supervisor of Election is charged with the responsibility for testing the machines to ensure the accuracy of their tabulations.

### 18 V.I.C. § 521. Adoption of system; procurement and commercial tabulations

The Joint Boards of Elections shall, with the consultation and assistance of the Supervisor of Elections and the Commissioner of Property and Procurement, acquire by competitive bidding, as required by the procurement laws of the Virgin Islands, not less than one hundred ten (110) electronic voting machines and related equipment for the purpose of conducting all party primaries, general elections, and referenda, and for receiving, registering, and counting the votes thereof. (*Annotations omitted.*)

### 18 V.I.C. § 522. Examination and approval of equipment

Any person or company interested in selling an electronic voting system may submit its proposal to the Government of the United States Virgin Islands, through the Joint Boards of Elections, the Supervisor of Elections and/or the Department of Property and Procurement of the Government of the United States Virgin Islands, for examination. *The*

*vote counting segment shall be certified after a satisfactory evaluation testing has been performed according to electronic industry standards. The testing shall include, but not be limited to, the basic source program and its security: the ballot reader; the vote processor, especially in its logic and memory components: the digital printer; the failsafe operations; the counting center environmental requirements; and the equipment reliability estimate.* For the purpose of assisting in examining the system, the Joint Boards may employ not more than three individuals who are expert in one or more fields of data processing, mechanical engineering, and public administration and shall require from them a written report of their examination. No officer of the Government of the United States Virgin Islands, no member of the Legislature of the Virgin Islands, no member of the Board of Elections, the Supervisor of Elections, no employee of the Election System of the Virgin Islands, nor any examiner shall have any pecuniary interest in any voting equipment. The Joint Boards of Elections and the Supervisor of Elections shall approve or disapprove any voting system submitted to them within 20 days after the date of its initial submission. (*Annotations omitted.*) (Emphasis added.)

## 18 V.I.C. § 523. Requirements for approval of system

No electronic voting system shall be approved for use in the Virgin Islands unless it is so constructed that:

(1) It permits and requires voting in secrecy;

(2) It permits each elector to vote at any election for all persons and offices for whom and for which he is lawfully entitled to vote, and no others; to vote for as many persons for an office as he is entitled to vote for; and to vote for or against any question upon which he is entitled to vote;

(3) The electronic voting system may be set to reject all votes for any office or measure when the number of votes therefor exceeds the number which the voter is entitled to cast or when the voter is not entitled to cast a vote for the office or measure;

(4) It is capable of correctly counting votes;

(5) When used in primary elections, the electronic voting equipment will count votes for the candidates of one part (sic); reject all votes for an office when the number of votes therefor exceeds the number which the voter is entitled to cast; and reject all votes of a voter cast for candidates of more than one party;

9

(6) It provides a method for write-in or paste-in voting;

(7) It is capable of accumulating a count of the specific number of votes tallied for a polling place, accumulating total votes by candidate for each office, and accumulating total votes for and against each question and issue of the ballots tallied for a polling place;

(8) It is capable of tallying votes from ballots of different parties from the same polling place, in the case of a primary election;

(9) It is capable of automatically producing precinct totals in printed form;

(10) It permits each elector, by one operation, to vote for all candidates running under a party symbol, should the elector so choose; and

(11) It is accessible for persons with disabilities, including persons who are blind or have low vision. (*Annotations omitted.*)

## 18 V.I.C. § 524. Joint Boards of Elections to prescribe rules and regulations

The Joint Boards of Elections shall prescribe rules and regulations to achieve and maintain the maximum degree of correctness, impartiality and efficiency of the procedures of voting, counting, tabulating, and recording votes, by the electronic or voting systems and methods provided by law. (*Annotations omitted.*)

■ A review of legislative intent regarding title 18 V.I.C. 584, which refers to the former paper ballot system, reveals the Legislature's intention to replace the previous paper system with voting machines by deleting the phrase "making a crossmark" and inserting instead the phrase "depressing a button." Act 4934, Section 12(h), Sess. L.1984 states:

(h) Section 584, subsection (a), is repealed in its entirety and a new subsection (a) is added to read as follows:

(a) The elector, after having been certified to vote and after having received upon his request verbal instructions as to the manner of voting from an election official, shall retire to a voting booth and vote the ballot on the electronic voting machine by depressing the button or buttons opposite the party emblem or candidate of the elector's choice.

(i) Section 584, subsection (b), paragraph (1), is amended by striking the words "making a crossmark (X) in the square", substituting therefor the following language: "depressing the button(s)", and further striking the word "writing".

(j) Section 584, subsection (c), paragraph (1) is amended by striking the words, "making a crossmark (X) in the square", and substituting therefor the words, "depressing a button(s)", and further striking the word "writing".

(k) Section 584, subsection (c), paragraph (2) is amended by striking the words "make a crossmark (X) in the square", and substituting therefor the words, "depressing a button(s)", and further striking the words "crossmark (X)", and substituting therefor the word "depression(s)". *Id.* at 128.

### 18 V.I.C. § 621. Duties of election officers after close of polls

After the polls are closed and the last elector has voted, the election officers and clerks who have been present throughout the election day may be replaced by another set of election officers, designated by the Board of Elections, which election officers shall have the same qualifications and take the same oath as prescribed in chapter 7 of this title. *Before the electronic voting machine is opened, the election officers shall count number of electors admitted to vote as shown by the district register and check such number against the number of electors admitted to vote as shown bv the voting list, and against the number of electors voting as shown on the list of voters who have voted,* shall announce the results, and include the result in the statement required by section 524 of this title. (*Annotations omitted.* Emphasis added.)

### 18 V.I.C. § 622. Counting votes; periodic announcement

As soon as the procedures prescribed by section 621 of this title have been complied with, the election officers and clerks who have been present throughout the election maybe replaced by another set of election officers, who shall have the same qualifications, receive the same compensation and take the same oath as prescribed in chapter 7 of this title. *The election officers shall open the electronic voting machine and obtain the tabulations separately cast for election to the boards of education and elections from all of the tabulations of ballots cast in the election: provided, that at primaries, the ballots shall be separated according to the political party to which they belong. The number of persons voting at a primary shall equal the total number of persons who signed the register at the polling stations.* (*Annotations omitted.*) (Emphasis added.)

**18 V.I.C. § 624. Ballot decisions to be made by inspectors; duty of judge**

Decisions concerning the validity of any ballots, and the count to be recorded thereon, shall be made by the Board of Elections —Amended Jan. 1, 2010, No. 7086, § 1(k), Sess. L. 2009.

This new amendment transferred the authority to make decisions on the validity of ballots from inspectors and judges, who are temporary election workers at the polls, to the Boards of Elections, which members are elected.

**18 V.I.C. § 4. Powers, duties and functions of Supervisor of Elections.**

The Office of the Supervisor of Elections, consisting of the Supervisor and two (2) Deputies (one for each district) who would be appointed by the Joint Boards of Elections for a term of eight (8) years, was first established by the Fifth Legislature on February 20, 1963, and amended several times up to and including the 1984 Election Reform Act. The Supervisor of Elections is empowered to employ, as he may deem necessary, other personnel who would be in the classified service of the Government of the Virgin Islands. Pursuant to 18 V.I.C. § 4(b)(1 to 11), the Office of the Supervisor was authorized to:

1) Create all necessary forms, including nomination petitions;

2) Certify the names of candidates for public territorial offices and membership on party committees;

3) Determine the sufficiency of petitions of candidates;

4) Determine the winning candidates for nomination and/or elections;

5) Prepare and furnish to the Boards of Election all required materials including voter cards and binders and prepare and furnish to the Boards the format of the ballot as it will appear on the electronic voting machines;

6) Prepare application for and distribute absentee ballots;

7) Advise Boards on rules and regulations for election officers, employees and assistants in the conduct of registration and enrollment of voters with the goal of achieving uniformity in election practices;

8) Prepare annual budget for Election Boards;

9) Publish at least twice a year in newspapers prior to June 16th of each election year a listing of pertinent dates and filing deadlines;

10) Prepare and deliver to all candidates a listing of qualified voters in districts or at large in the Territory; and

11) Prepare and furnish replacements of the Certificate of Registration Cards for all registered voters in the Territory.

■ Thus, the policy-making authority in regard to elections in the Territory was and is the Joint Board of Elections. The Office of the Supervisor of Elections administers the system particularly in the process of registering eligible voters, maintaining the voter rolls, and supplying the Boards of Elections with all necessary forms, including, of course, ballots for the voting machines.

## ANALYSIS

■ Having identified the current law governing elections, there are two (2) terms which are applicable to judicial interpretation of legislative enactments in this case. The first is the word "repeal" as defined in the most authoritative source:

[R]epeal, *n.* (**16c**) RESCIND (3); esp., abrogation of an existing law by legislative act.

*Express repeal* (18c) Repeal by specific declaration in a new statute or main motion. *Implied repeal.* (18c) Repeal by irreconcilable conflict between an old law or main motion and a more recent law or motion. — Also termed *repeal by implication.*

BLACK'S LAW DICTIONARY (9th Ed. 2009).

■ The other term that is relevant to this case is the well-recognized theory of statutory interpretation known as "last in time," meaning when two statutes are in conflict, the more recent enactment will prevail. *Island Finance v. Frett*, 21 V.I. 161 (Terr. Ct. 1984); *Monsanto v. Government*, 20 V.I. 446, 452 (Terr. Ct. 1984). This virtually universal practice of courts in interpreting legislative enactments dictates that the Election Reform Act of 1984 and the amendments thereto cited in this Memorandum Opinion abolished the paper ballot system of voting in this Territory and replaced it with the current system of electronic voting machines.

13

 The sections of title 18 of the Virgin Islands Code which the Plaintiff proclaims entitles him to vote by either an official or unofficial paper ballot are set forth below, followed by an analysis of their effect on current law:

### 261. Qualifications generally

Except as provided in this chapter, every resident of the Virgin Islands who is a citizen of the United States and is 18 years of age or over, has the right to franchise, and shall be entitled to vote at all elections if he or she has complied with the provisions of this title requiring and regulating the registration of its electors.

This section lists the qualifications for citizens entitled to vote. This section is still valid and was last amended in 1971. However, it is irrelevant to Plaintiffs claims.

### 513. Responsibility for accurate printing and safekeeping

The Supervisor of Elections shall cause all the ballots to be used at a primary or election to be accurately printed in clear type, and he and the boards of elections, as the case may be, shall be responsible for the safekeeping of the ballots while in his or their possession or in the possession of his or their deputies, agents or subordinates. — *Added February 20, 1963.*

### 514. Instructions for voters

The Supervisor of Elections shall prepare full instructions for the guidance of voters at primaries and general elections, as to obtaining ballots, the manner of marking them, the method of gaining assistance, and as to obtaining new ballots in place of those that are found to be unserviceable or are accidentally spoiled; and shall cause such instructions to be printed in clear type, on separate cards, to be called cards of instruction; and he shall furnish to each board of elections a suitable number of such cards for each polling place in its district. — *Added February 20, 1963.*

These sections direct the Supervisor of Elections to provide instructions for and guidance of voters which duties were updated in sections 503-507 and which are reproduced earlier in this Opinion. Again, these sections (§ 513 and § 514) were repealed by the enactment of the Election Reform Act of 1984. Moreover, these amended statutes (§§ 503-507) expressly negate Plaintiff's position that he is entitled to vote by paper ballots.

### 515. Delivery of ballots to boards

The Supervisor of Elections shall send in sealed packages for each polling district the ballots prepared by him to the several boards of elections so as to be received by them at least two days prior to the day of the primary or election. Each package shall be marked on the outside, clearly designating the election district and polling district for which the ballots are intended and the number of ballots of each kind enclosed. If there is more than one polling place for a polling district, there shall be sent a sealed package of ballots for each such polling place, and each such package shall also be marked with the designation of the polling place for which it is intended. The Supervisor of Elections shall keep a record of the time when, and the manner in which, the several packages were sent to the boards and a record of the number of ballots of each kind so forwarded. — *Added February 20, 1963; . . . amended June 26, 1968, Pt. II, No. 2252, § 5., Sess. L. 1968, p. 70.*

### 516. Receipts for ballots

Each board of elections shall, on delivery to it of the packages referred to in section 515 of this title, return a receipt therefor, signed by the chairman or vice-chairman of the board, to the Supervisor of Elections or his deputy. — *Added February 20, 1963.*

### 517. Ballot boxes

The Supervisor of Elections shall furnish to each board of elections one ballot box for each polling place in its district, to contain the ballots voted. The ballot boxes shall be of sufficient size to contain all the votes and shall be so constructed that no ballots can be taken out of any box without the box being opened. — *Added February 20, 1963.*

Sections 515 to 517 provide for delivery of ballots under the pre-existing paper ballot system, but was effectively repealed by sections 451, 471 and 492 which require that the Supervisor of Elections shall "prepare the format of the ballot as it shall appear on the electronic voting machines." Section 517 which was added in 1963 dealt with ballot boxes, but was expressly repealed by amending section 584 to delete the phrase "making a crossmark" and inserting instead the phrase "depressing a button(s)." Thus, Plaintiff's reliance on those repealed sections of the Code is, simply put, wrong as a matter of law.

### 581. Personal voting required; persons permitted to vote; change of residence within district

(a) Except as provided by chapter 25 of this title, the right of voting may only be exercised by personal attendance, and no unregistered voter shall be allowed to vote at any primary or election, except by order of the district court. All persons whose names appear on the district register of electors of the polling district shall be permitted to vote, unless it is shown to the satisfaction of the election officers that he no longer resides in the election district; but at a primary a person shall be permitted to vote only on the ballot of the political party in which he is enrolled in the district register.

(b) If a voter has moved his residence from one polling district to another in the same legislative district within 30 days immediately preceding a primary or election, and for any reason his registration has not been transferred to the polling district of his new residence, he shall be permitted to vote only in the polling district in which he is registered and formerly resided. However, at the next election he shall be required to vote at the polling district where he resides. (*Annotations omitted.*)

This section defines voting as a personal right which can only be exercised by an eligible voter. This section was amended and included in the Election Reform Act of 1984. Again, this citation is totally irrelevant to Plaintiff's claim that he is entitled by law to the use of paper ballots as a means of voting instead of an electronic machine.

### 554. Unofficial ballots

If from *(sic)* any cause the official ballots have not been received at a polling place on the morning of a primary or election and before the opening of the polls, or if the supply of ballots shall become exhausted during the process of balloting and before the polls are closed, the board of elections concerned shall cause unofficial ballots to be prepared, substantially, as far as may be, in form of the official ballots, and upon receipt of such unofficial ballots from the board, accompanied by a statement of its chairman or vice-chairman under oath that the unofficial ballots have been so prepared and that the official ballots have not been received, or that the supply has been exhausted, the election

officers at such polling place shall cause the unofficial ballots so sub-
stituted to be used in lieu of the official ballots, in order that no elector
shall be deprived of the right to vote for the lack of a ballot.

Section 554 clearly referred to the pre-existing system of paper ballots since
it authorized the district Board of Elections to supply "unofficial ballots" if
no ballots were delivered to the polling place, or the supply was exhausted
before the polls closed. This section was added in 1963 and thus was re-
pealed by the enactment of the Election Reform Act of 1984.

### 582. Manner of applying to vote; identification; voters' certifi-
### cates; entries; voting list

(a) Each elector desiring to vote shall, when he enters the place
where the primary or general election is being held, state his name and
present the Certificate of Registration, issued him in accordance with
subsection (e) of section 100 of this title, to the election officers, if he
is in possession of the same. If his registration card appears in the dis-
trict register and, in the case of a primary, his party enrollment appears
thereon, and the election officers are satisfied as to his identity and
continued residence in the district, he shall be admitted to vote.

(b) Election officers shall require the elector to sign or make his or
her mark on a voter's certificate for the purpose of comparing his sig-
nature thereon with his signature or mark appearing on the district reg-
ister and on the elector's Certificate of Registration, if he is in pos-
session of the same. Such voter's certificate shall be supplied by the
Supervisor of Elections in such quantities as he deems necessary . .

Again, Plaintiff's reliance on this section to enjoin the general election
is misplaced because the section was amended by the Election Reform
Act of 1984, is valid in its current form and does not even vaguely support
Plaintiffs assertion of entitlement to using paper ballots instead of the
electronic machines, for voting in the general election on November 2,
2010.

The foregoing recital of key portions of the Election Reform Act of
1984, including those Code sections cited by Plaintiff, discussed above,
effectively refute Plaintiff's allegations that paper ballots and ballot boxes

17

are now included in the voting system used in this Territory for the last twenty-four (24) years.[5]

Plaintiff, in paragraph 17 of his Motion And Memorandum of Law (p.4), states: "Defendants have no authority under H.A.V.A. of 2002 and 18 VIC to amend or change the prescribe (*sic*) uses of the provisional ballots." While this reference to the use of provisional ballots maybe at odds with his claim of right to use "an official or unofficial paper ballot," but since Plaintiff has raised it, the Court will address it.

■ The Help America Vote Act of 2002 (HAVA) was enacted by Congress following the stalemate (particularly in the State of Florida) in the vote tally in the presidential election of 2000. The election winner was ultimately decided by the U.S. Supreme Court. HAVA's principal purpose was not to prescribe any criteria on the conduct of state or local voting options, but rather to provide federal funding to upgrade existing voting systems in election districts in all of the States and Territories. For example, Puerto Rico, Guam, American Samoa and the United States Virgin Islands were eligible to receive one-tenth of one percent of the aggregate amount allotted. (HAVA sections 101(b)(1)(F); and 101(d)(2)(B))

■ Each election district was merely required to provide a voting method that allowed disabled individuals to vote secretly and independently. Accessibility was the essential mandate, not the specific method of voting. Aside from his failure to cite any specific section of the federal law, Plaintiff's reliance on HAVA is unpersuasive.[6] *See Weber v. Shelley*, 347 F.3d 1101 (9th Cir. 2003), holding that a touch-screen system as an alternative to paper ballots was a reasonable, non-discriminatory choice even though that system made some kinds of fraud more difficult to detect. *Id.* at 1107.[7]

---

[5] The only paper ballots now used are absentee ballots (18 V.I.C. Chapter 25, which includes members of the armed services of the United States) and provisional ballots (18 V.I.C. § 1).

[6] Congress authorized only the Attorney General of the United States to bring suit to enforce the provisions of HAVA. *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004).

[7] Harvard Law And Policy Review Online, Vol. 3 (Jan. 22, 2009) by Daniel P. Tokaji is an in-depth article which ranks the HAVA as a genuine advancement in voter enhancement on a par with the Voting Rights Act of 1965 and National Voter Registration Act of 1993. Yet it identifies the "pervasive decentralization and partisanship of American elections" as a fun-

Additionally, Plaintiff argues that "the Defendants arbitrarily, capriciously and discriminatorily [are trying] to influence, persuade, intimidate or coerce Plaintiff and others to use a provisional ballot rather than the electronic voting machines. . . ." Plaintiff's Motion And Memorandum, ¶ 30, p. 5.

The most recent amendment to the election statute occurred on January 1, 2010 when the current Legislature defined the term "provisional ballot" in 18 V.I.C. § 1 —

> " 'provisional ballot' means a special instrument upon which the voter's choices are recorded and which is subject to or dependent upon a post-election verification or confirmation of the voter's right to have voted on Election Day."

Pursuant to his statutory authority, the Supervisor of Elections on February 27, 2004 issued the "Rules and Regulations For The Administration Of The Provisional Balloting." See Government Exhibit 5. Section 1 details the criteria that trigger the use of a provisional ballot such as when the voter claims to be eligible to vote, but is unable to produce required identification as a voter. Section 2 enumerates the steps the election official must take in providing the individual with the provisional ballot after receiving proof of identity and residence in the district and obtaining an affidavit from the individual before providing him/her with the provisional ballot. After the provisional ballot is completed by the individual it is kept in a sealed envelope which is presented to the Joint Boards of Election which is then required to evaluate the provisional ballot and determine its validity within ten (10) days of the election.

As noted, Plaintiff complains that the Defendants (the Supervisor and the Joint Boards of Election) "have no authority . . . to amend or change . . . the uses of the provisional ballots." This charge is a clear misstatement of the law for two (2) reasons. First, the procedures adopted by the Supervisor of Elections and the Joint Boards of Elections have been published, thereby informing the public of the restrictions and requirements for provisional balloting. Plaintiff has not articulated any change in the regulations published by the Supervisor in 2004. This Court

damental flaw in our national elections system which needs federal, i.e., Congressional action.

19

concludes that the published Regulations are lawful. While they were published before the Legislature defined the provisional ballot in section 1 of Title 18 in January, 2010, the Regulations mirror the legislative intent to limit the use of provisional balloting by specific criteria and procedures.

Next, and more important, the law empowers both the Supervisor and the Joint Boards of Elections to establish and enforce the rules and regulations concerning election processes as clearly enunciated in the statutory provisions previously discussed in this Memorandum Opinion.

The passage of the Organic Act of 1936 was a singular landmark in the history of the Virgin Islands. Universal suffrage gave "rise to the emergence of political parties with their rationale in popular support."[8] As noted in the Preamble, this historic contribution to our liberties as American citizens was fueled by the consistent and vigorous exercise by Virgin Islanders of our right of universal suffrage. Plaintiff's petition for relief is that this Court enjoin, i.e., stop the election scheduled for November 2, 2010. This Court declines to do so for all the legal reasons explained. Additionally, an injunction to cancel the November 2, 2010 general election would not only be a disservice to the candidates who are contesting all the elected offices on the ballot, but also detrimental to the eligible voters who — this Court verily believes — are anxiously awaiting the opportunity to exercise their fundamental and inalienable right to choose the leaders of our Government.

## CONCLUSION

Based on the foregoing discussions and analysis of the issues raised in this case this Court makes the following findings of fact and conclusions of law:

1. Plaintiff has failed to present any evidence whatsoever for his demand that paper ballots be used as a legitimate exercise of citizens' franchise rights in the general election on November 2, 2010.

2. Plaintiff has no standing under HAVA to bring this action.

3. Plaintiff has failed to meet his burden of proof that he will be irrevocably harmed if the general election scheduled for November 2,

---

[8] Boyer, William W. (2010), *America's Virgin Islands — A History of Human Rights and Wrongs*, p. 188, Durham, North Carolina: Carolina Academic Press.

20

2010 is not enjoined from using electronic voting machines. In point of fact, Plaintiff has demonstrated no legal harm whatsoever.

4. The Court finds that the paper ballot system of voting which the Plaintiff champions in this Action For Injunctive Relief has been expressly repealed by the enactment of the Election Reform Act since 1984 and all amendments thereto.

5. That the rules and regulations promulgated by the Supervisor of Elections and the Joint Boards of Elections — including the Rules and Regulations For The Administration Of The Provisional Ballot issued on February 27, 2004 — are authorized by Title 18 of the Virgin Islands Code.

Accordingly, the premises considered, it is hereby

ORDERED that Plaintiff's request for a preliminary injunction and temporary restraining order of the November 2, 2010 general election be and is DENIED. It is further

ORDERED that Defendants' Motion to Dismiss is GRANTED. It is further

ORDERED that Plaintiff's Complaint For Injunctive Relief and Temporary Restraining Order be and the same is DISMISSED WITH PREJUDICE. Finally, it is

ORDERED that a copy of this Memorandum Opinion and Order be served on the Parties, **FORTHWITH**.