**BEVRON GOODWIN, Plaintiff**
**v.**
**CAROLINE FAWKES, in Her Official Capacity as SUPERVISOR OF**
**ELECTIONS, and ELECTION SYSTEM OF THE U.S. VIRGIN**
**ISLANDS, Defendants**

Case No. SX-11-CV-435

Superior Court of the Virgin Islands

Division of St. Croix

December 12, 2016

J. RUSSELL B. PATE, ESQ., The Pate Law Firm, St. Thomas, USVI; MICHELLE T. MEADE, ESQ., St. Thomas, USVI, *For Plaintiff.*

CLAUDE E. WALKER, ESQ., Attorney General of the Virgin Islands; ERIKA
 M. SCOTT, ESQ., Assistant Attorney General, Virgin Islands Department
 of Justice, Christiansted, USVI, *For Defendants.*

WILLOCKS, *Administrative Judge*

## MEMORANDUM OPINION

### (December 12, 2016)

**THIS MATTER** is before the Court on Plaintiff's Complaint[1] and
Motion for Declaratory Judgment as well as the Defendants' Motion to
Dismiss. For the reasons stated below, the Court will deny the Plaintiff's
Motion and grant the Defendants' Motion to Dismiss.

## BACKGROUND

Bevron Goodwin filed this action in the Superior Court of the Virgin
Islands on September 15, 2011, purportedly on his own behalf and on
behalf of all persons born in and residing in the U.S. Virgin Islands.[2] He

---

[1] Millions of Americans went to the polls on November 8, 2016, to cast their ballots for
president of the United States — but not any of the Americans who live in the U.S. Virgin
Islands or any other Territory of the United States. Americans living in territories cannot vote
for President, do not have representation in the United States Senate, and have one nonvoting
representative apiece in the United States House of Representatives. Bevron Goodwin be-
lieves this is unfair, unjust, undemocratic, and discriminatory. So does the vast majority of
people living in the territories.

[2] Goodwin attached a newspaper article to his motion that referenced other lawsuits, similar
to this case, filed in the Superior Court of the Virgin Islands regarding Virgin Islanders being
denied the right to vote in national elections. (*See* Pl.'s Mot. for Decl. Jgmt. at Exhs., filed
June 27, 2012.) *See King v. Appleton*, 61 V.I. 339, 348 (2014) (courts can take judicial notice
of their own cases). The other St. Croix case was filed on September 15, 2011, *Bevron
Goodwin v. United States Federal Election Commission, et al.*, SX-11-CV-434, and was later
removed to the District Court and eventually dismissed on motion. *See Goodwin v. U.S. FEC*,
1:11-cv-106, 2012 U.S. Dist. LEXIS 125926 (D.V.I. Sept. 5, 2012). Two other cases, also
filed by the same attorney, were filed in the District of St. Thomas & St. John on behalf of
Michael Charles. *Michael Charles v. United States Federal Election Commission, et al.*,
ST-11-CV-505, was removed to the District Court and, like *Goodwin*, dismissed. *See, e.g.*,
*Charles v. U.S. FEC*, 3:11-cv-110, 2012 U.S. Dist. LEXIS 118428 (D.V.I. Aug. 20, 2012).
The other case, *Michael Charles v. Election Systems of the U.S. Virgin Islands, et al.*, ST-
11-CV-506, was dismissed by stipulation of the parties, but only after the Superior Court
ordered the parties to brief whether Charles was entitled to a jury trial and whether the United
States was an indispensable party. (*See* Order 1, entered Sept. 5, 2012 (directing parties to
brief concerns); Order, entered Sept. 26, 2012 (approving stipulated dismissal), *Charles v.
Elec. Sys. of V.I., et al.*, ST-11-CV-506.)

named as defendants John Abramson, Jr., in his official capacity as Supervisor of Elections, and the "Election System of the U.S. Virgin Islands." In a twenty-three page complaint, subsequently amended on October 3, 2011, Goodwin chronicled the nation's "tortuous history" with slavery, civil war, and reconstruction, and its struggle ever since its birth to live up to its foundational "principles of equality and democracy," including the "sacred and hallowed . . . fundamental right that each citizen has the right to vote . . . [and] to run for elected office." (Amend. Compl. ¶ 7.) Goodwin situates the U.S. Virgin Islands within this narrative and juxtaposes "[t]he Spirit of the Constitution and the principles and ideals of the Founding Fathers," *id.* at ¶ 17, with "the racist and bigoted denial of fundamental voting rights to U.S. citizens residing in the United States Virgin Islands from electing the President or members of Congress, as well as the ability to run for these federal offices." *Id.* at ¶ 22. Goodwin alleges that the barrier to equal voting rights in the U.S. Virgin Islands is the *Insular Cases*, which he states:

> are in total diametrical opposition to our Constitution which provides for the equal protection of all races, and, further, the principal that enfranchisement is the foundation of our personal[ ] liberties, civil rights, and our democratic system. Using the imperialistic and racist Insular Cases, U.S. citizens in the Virgin Islands have been conferred a second class, *Jim Crow* status. *Id.* at ¶ 21 (footnote omitted).

Like the courts that later "struck down the racist principle of separate but equal in *Plessy v. Ferguson*," *id.* at ¶ 22, the Superior Court can also strike down the *Insular Cases*, Goodwin asserts. Placed against this historical backdrop are the claims Goodwin asserted in his complaint.[3]

In Count I Goodwin asserted a claim for *prima facie* racial discrimination in violation of the Fourteenth and Fifteenth Amendments to the Constitution of the United States, as applied to the Virgin Islands

---

[3] So far as the Court can discern, Goodwin only made minor differences when he amended his complaint. The September 15, 2011 complaint is twenty-three pages with forty-nine paragraphs, thirty-two footnotes, one picture, and four attachments (two of which were both called A), whereas the October 3, 2011 Amended Complaint is twenty-four pages with fifty paragraphs, thirty-four footnotes, two pictures, and the same four attachments. Accordingly, all references to "complaint" should be understood as referring to the October 3, 2011 amended complaint.

through the Revised Organic Act of 1954. Specifically, in support of this claim, Goodwin alleged that, Woodrow Wilson, President of the United States from 1913 to 1921, was in office in 1917 when the former Danish West Indies (now the Virgin Islands of the United States) were transferred to the United States from the Kingdom of Denmark in 1917 and that he "openly supported the Ku Klux Klan" and "demonized black political participation" in American democracy. *Id.* at ¶¶ 24-25. Consequently, "[b]y the time the Virgin Islands was purchased in 1917, there was not one black representative in Congress, the federal Judiciary, and of course, the President or his Executive Cabinet. It was a government of white males with a lone white Congresswoman from Montana." *Id.* at ¶ 27 (footnote omitted). Nearly one hundred years later and the U.S. Virgin Islands is still "trapped in political limbo . . . by the opinions of the same racist Supreme Court that created 'separate but equal' in *Plessy v. Ferguson*," Goodwin alleges. *Id.* at ¶ 34. "And, while the courts have endeavored to dismantle and reverse the vestiges of racism [in the States], nothing has been done about the . . . racist disenfranchisement [in the Territories]." *Id.* Without representation in the national legislature, "Virgin Island[er]s are then left in constant and continuing violation of the most fundamental Constitutional right — elected representation." *Id.* at ¶ 35 (footnote omitted).

Goodwin concludes this count by alleging that he is a citizen, is over eighteen years of age yet cannot vote for President, United States Senator, or for a Representative in the House, and cannot run for these offices either. Consequently, "Goodwin along with all other eligible U.S. citizens residing in the U.S. Virgin Islands, have been denied the right to vote, the right to run for office, and the right to participate in the Electoral College, due to the prejudices and racism of nearly a century ago. This racism has continued unmitigated, with no implementation of a Constitutional representation in the federal government or any political indication in the foreseeable future that this will change." *Id.* at ¶ 40.

In Count III,[4] Goodwin sought declaratory relief, claiming that "[o]nly the Court can cut the Gordian knot of political deadlock and free U.S. citizens in the United States Virgin Islands from the 'stigma of inferiority'

---

[4] Goodwin subsequently abandoned his second claim, which sought to enjoin the Defendants from removing this case to federal court. The Defendants did not remove this case and their time to remove has long since passed.

that continues the disenfranchisement that began with the implementation of Jim Crow." *Id.* at ¶ 48.

> Whether it is individual voters or Electoral College, the fact remains that the U.S. Virgin Islands are being denied the most basic and fundamental Constitutional right — the right to vote — and the Court must act to correct this injustice as politicians have failed to do so for nearly the past one hundred years. It is undisputable that the Virgin Islands was denied enfranchisement due to the racist, xenophobic, and discriminatory attitudes which permeated society in 1917 when an all-white President, Congress, Supreme Court, and federal judiciary governed America. *Id.* at ¶ 46 (footnote omitted).

Goodwin concludes that as "[t]he United States Virgin Islands approaches one hundred (100) years of racial discrimination ... it is the courts alone who can overturn the racist and tortured rationale of the Insular Cases." *Id.* at ¶ 49.

Finally, in his prayer for relief, Goodwin asked the Court to award damages, attorney's fees and costs, pre- and post-judgment interest, and to further decree that

> the Election System of the U.S Virgin Islands [must] develop a procedure for the U.S. Virgin Islands, or citizens of the U.S. Virgin Islands, to vote for the U.S. President, to register to run for U.S. President, and to register to run for Congressional office in House and Senate positions and to vote for those running for Congressional office, House and Senate positions, and that those elected to represent the United States Virgin Islands be presented to Congress to be seated accordingly. *Id.* at 23-24.

Approximately eight months after Goodwin commenced this action, this Court issued an order, *sua sponte*, entered May 16, 2012, to alert him to the length of time which had passed without any movement or action on his part as the plaintiff. Goodwin responded by filing a motion, on June 27, 2012, for declaratory judgment, which the Court scheduled for oral argument on July 16, 2012. Three days before the hearing, on July 13, 2012, the Defendants answered Goodwin's complaint and alleged in their answer that the Superior Court lacks subject matter jurisdiction and, *inter*

*alia*, that the Superior Court is powerless to grant Goodwin a remedy.[5] The same day, the Defendants also field their response in opposition to Goodwin's motion and a motion to dismiss for failure to state a claim for relief. After hearing argument from the parties on July 16, 2012, Goodwin filed his response, on September 7, 2012, in opposition to the Defendants' motion to dismiss. Defendants filed their reply on September 21, 2012. So far as the record shows,[6] Goodwin did not file a reply to the Defendants' opposition to his declaratory judgment motion.

After briefing had closed and the Court had taken both motions under advisement — and before the Court scheduled a second hearing in January 2016, to address certain concerns (discussed further below) — Goodwin filed multiple notices and submitted the following items (listed in order as filed):

- an excerpt from the Congressional Record of debate held on the floor of the House of Representatives on December 20, 1898, specifically statements that Representative John Sharp Williams of Mississippi made on H.R. 11266, "An Act Making Appropriations for the Department of Agriculture for the Fiscal Year ending June 30, 1900, 30 Stat. 947 (Mar. 1, 1899); H.R. 11266. *See* 32 Cong. Rec. 338, 341-42 (1898);

- citations to then-recent decisions of the Supreme Court of the United States in *Shelby County v. Holder*, 570 U.S. 529, 133 S. Ct.

---

[5] Notably, the Defendants did not explain their delay nor seek permission to file their answer late. However, the case file and docket did not (and still do not) show that Goodwin filed proof of service of his complaint or amended complaint on any of the Defendants.

[6] The record of proceedings prepared by the clerk indicates that Goodwin requested, and the Court from the bench granted, leave to amend his complaint a second time. Goodwin did reference his "Second Amended Complaint" in a notice filed on September 7, 2012, in response to the July 16, 2012 hearing. However, neither the case file nor the electronic docket shows that Goodwin filed a third version of his complaint. Nevertheless, this Court noted a similar concern in an order entered January 28, 2016 because certain papers on file referred to an amended complaint. Counsel for Goodwin responded by providing a date-stamped copy of his October 3, 2011 amended complaint, which the Clerk's office docketed *nunc pro tunc*. But as of January 2016, the record did not reflect that Goodwin had amended his complaint in 2011. Consequently, when Goodwin responded in 2016 to the Court's order, *see infra*, he provided a copy of his October 3, 2011 amended complaint, not a copy of a second amended complaint. So, the Court presumes that all references to "Second Amended Complaint" were intended to refer to the second complaint, as amended, and filed in October 2011, rather than to the third version of the complaint, e.g., complaint, amended complaint, second amended complaint, and so forth.

111

2612, 186 L. Ed. 2d 651 (2013), and *United States v. Windsor*, 570 U.S. 744, 133 S. Ct. 2675, 186 L. Ed. 2d 808 (2013);

- a January 15, 2014 article from the Miami Herald by Richard R. Robles titled *Puerto Ricans, Others Still Denied Full Voting Rights*;

- a January 22, 2014 article from the Huffington Post by Neil Weare, president and founder of We the People Project, titled *Fighting for Democracy, But Can't Vote for President*;

- a February 19, 2014 editorial posted on CNN.com by Neal Weare titled *Citizenship is a Birthright in U.S. Territories*;

- a copy of a speech given by the Honorable Juan R. Torruella, judge on the United States Court of Appeals for the First Circuit, at Harvard Law School on February 19, 2014 titled *The* Insular Cases: *A Declaration of their Bankruptcy and My Harvard Pronouncement*;

- a March 18, 2014 article from the Orlando Sentinel by Neal Weare titled *Americans in Territories Have Earned the Right to Pick President*;

- Brief for Scholars of Constitutional Law and Legal History as Amicus Curiae in Support of Neither Party, *Tuaua v. United States*, No. 13-5272 (D.C. Cir. May 12, 2014);

- an internet link to a March 8, 2015 episode of *Last Week Tonight with John Oliver* captioned U.S. Territories uploaded to YouTube.

- a May 29, 2015 power point presentation to the Virgin Islands Bar Association by the Honorable Gustavo A. Gelpí, judge on the United States District Court for the District of Puerto Rico, titled The Constitutional Evolution of Overseas U.S. Territories (1898-Present);

- a book titled *Reconsidering the Insular Cases: the Past and Future of the American Empire* (Gerald L. Neuman & Tomiko Brown-Nagin, eds. 2015) (hereinafter "*Reconsidering the Insular Cases*").

- an August 30, 2015 article posted to KFYO News Talk radio website by Allen Corbin titled *Statues of Jefferson Davis and Woodrow Wilson Removed from University of Texas Sunday Morning*; and a September 1, 2015 article by Ralph K.M. Haurwitz, carried by the Virgin Islands Daily News titled *University of Texas Takes Down Statues of Jefferson Davis and Woodrow Wilson*;

112

- a November 20, 2015 editorial posted on CNN.com by William R. Keylor titled *Should We Scrub all Memorials to Woodrow Wilson?*, and a November 25, 2015 editorial written by the Editorial Board of the New York Times titled *The Case Against Woodrow Wilson at Princeton.*[7]

Counsel for the Defendants never responded to any of Goodwin's submissions. As well as the thirteen notices, Goodwin also filed, between October 24, 2014, and January 13, 2016, three "requests for decision."

In response, the Court issued an order, entered January 28, 2016, and denied Goodwin's requests for ruling without prejudice. This denial was based upon further review of the file that revealed a number of concerns. One concern was that Caroline Fawkes replaced John Abramson, Jr. as supervisor of elections, but the caption did not reflect that. (*See* Order 3, entered Jan. 28, 2016 (taking judicial notice and citing *Mapp v. Fawkes*, 61 V.I. 521, 524 (2014), and *Marsh-Monsanto v. St. Thomas-St. John Bd. of Elections*, 60 V.I. 41, 47 n.3 (Super. Ct. 2014)) (parenthetical quotations omitted).) So, the caption needed to be amended. The remaining concerns included:

> whether Defendant "Election System of the U.S. Virgin Islands" is a "person" according to the law. So far as the Court is aware, "Election System" is not a corporation (private or public) or a board, department, agency, or other instrumentality of the Government of the Virgin Islands. So, Plaintiff must clarify who "Election System" is and whether this Defendant is a person sufficient for the Superior Court to have both personal and subject-matter jurisdiction over it. . . .
>
> [Next] the complaint names as plaintiffs Bevron Goodwin as well as "all other persons born-in and residing in the U.S. Virgin Islands." This designation is unclear because, if read broadly, the potential plaintiffs could include both "persons born-in" and also all persons "residing in" the Virgin Islands. In other words, the potential plaintiffs could include all persons born in the Virgin Islands (regardless where they reside presently) and also all persons who reside presently in the Virgin Islands (regardless of where they were born). In contrast, however, if the

---

[7] (*See* Notices to Ct., filed Feb. 7, 2013, July 17, 2013, Jan. 21, 2014, Jan. 28, 2014, Feb. 24, 2014, Feb. 28, 2014, Apr. 2, 2014, Aug. 7, 2014, Mar. 12, 2015, June 11, 2015, July 8, 2015, Sept. 9, 2015, and Dec. 7, 2015.)

caption were read narrowly, then only those "persons born-in" and still "residing in" the Virgin Islands would be potential plaintiffs. So how "all other persons" is defined must be clarified before relief could be granted to anyone other than Mr. Goodwin individually.

[Also], it is not clear on what basis Mr. Goodwin is pursuing claims for anyone other than himself. If the answer is through a class action lawsuit, then the Court must first decide whether class actions are permitted in the Virgin Islands and, if they are, pursuant to what authority. One source for class action litigation is Federal Rule of Civil Procedure 23 as applied through Superior Court Rule 7. But if Rule 23 were a substantive rule, and not merely a procedural rule, then the Superior Court could not apply it through Rule 7. *See, e.g., Gov't of the V.I. v. Durant*, 49 V.I. 366, 373-74 (2009) (rejecting application of Federal Rule of Criminal Procedure 12.2(c)(1)(A) through Superior Court Rule 7 as an unauthorized exercise of rulemaking authority) ("A procedural rule regulates the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. A substantive rule of law, on the other hand, creates and defines the rights, duties, and obligations that are subsequently administered by procedural rules of law." (brackets, ellipsis, citations, and internal quotation marks omitted)). Assuming, *arguendo*, that Rule 23 is unavailable, then the question becomes whether the common law allows class action lawsuits since the Legislature has not enacted a statute to authorize one person to sue on behalf of a class of persons. *Compare Sica v. City of Philadelphia*, 77 Pa. Commw. 97, 465 A.2d 91, 93 (1983) ("The modern class action is a procedural device which did not exist at common law; therefore, a would-be class plaintiff must find statutory or rule authority permitting a class action in a particular suit."), *with, Blumenthal v. Medina Supply Co.*, 100 Ohio App. 3d 473, 654 N.E.2d 368, 369 (1995) ("Class action suits were known at common law." (citing *Hansberry v. Lee*, 311 U.S. 32, 61 S. Ct. 115, 85 L. Ed. 22 (1940)). *See generally* 7A Wright & Miller, *Fed. Practice & Procedure: Civil 3d* § 1751 (2005) ("Because of their origin in the English bill of peace, class suits in the United States originally were of equitable cognizance only. This was true not only because of the rigid common-law rules discouraging joinder of parties inherited from England but because the procedural machinery of the law courts was not well adapted to protect

114

the rights of unknown, unnamed, or nonparticipating persons whose interests in the dispute might be concluded by the litigation."). Thus, whether Mr. Goodwin has standing to sue for redress of other people's injuries must be addressed.

Another concern is with the claims and the relief Mr. Goodwin seeks. . . . Plaintiff alleges violations of the Fourteen and Fifteenth Amendments to the United States Constitution. But Plaintiff does not allege which of the two named Defendants is liable for these violations and what specific acts these Defendants undertook that violates his constitutional rights. In other words, there is no nexus between what Plaintiff complains of and any action the Defendants took. . . .

[T]he last concern is with the multiple notices Plaintiff submitted as well as the content of those notices. As mentioned earlier, the Defendants did not object or otherwise respond to any of the notices. But the Court is unclear of the purpose for these notices and whether Plaintiff is seeking to have the content added to the record. It is also unclear what elements of Plaintiff's claims the notices (even if admitted) would prove. The purpose of Plaintiffs multiple notices filed after the July 16, 2012 hearing must also be addressed. (Jan. 28, 2016 Order 3-6 (footnote and paragraph breaks omitted).)

To address these concerns, the Court scheduled a hearing for February 5, 2016. Goodwin and Fawkes appeared in person and through counsel. During the discussion, the Court reiterated a concern raised during the July 2012 hearing, that Goodwin did not allege his race in his complaint. The Court also pointed out to Goodwin that he did not allege in his complaint whether he is registered to vote in the Virgin Islands. After hearing from the parties, the Court asked both sides if they wished for leave of the Court to supplement their arguments. Both declined. Subsequently, however, Goodwin, filed a notice in which his counsel listed "Goodwin's voter identification number," asked the Court to "take judicial notice" that he "was present at plaintiff counsel's table" at the hearing, and that he is Black. He further stated that Court "has the ability to efficiently amend the pleading to quickly cure the defect in order to reach a ruling on the merits" "if there is any issue with [Goodwin's] racial identi[t]y or voter registration." (Pl.'s Not. to Ct. 1, filed Feb. 9, 2016.)

Ten days later, Goodwin notified the Court that he had not received the January 28, 2016 Order (including the concerns addressed therein) and

115

therefore did not address any of the concerns during the hearing. Goodwin subsequently filed a motion, on February 25, 2016, to request an extension of time to file a supplemental brief and also filed the brief the same day. In an order entered March 22, 2016, the Court granted Goodwin's motion and accepted his supplemental brief. In a second order, also entered March 22, 2015, the Court *sua sponte* amended the caption to substitute Fawkes in place of John Abramson, Jr. On October 24, 2016, Goodwin filed his most recent request for ruling.

## DISCUSSION

### I. Procedural Discussion

Before turning to the merits of either motion, the Court must first resolve a number of procedural points, beginning with who the parties to this action are. *Cf. Alstatt v. Beshear*, 5:13-cv-P180, 2013 U.S. Dist. LEXIS 165363, at *2 (W.D. Ky. Nov. 19, 2013) ("Before the Court can rule on any of the pending motions, it must clarify who the parties are."); *Law Students Civ. Rights Research Council v. Wadmond*, 299 F. Supp. 117, 122 (S.D.N.Y. 1969) ("Before proceeding to the merits we must examine claims made with respect to the standing of the plaintiffs, the suability of the defendants, the failure to join the Court of Appeals or its members, and the desirability of abstention.").

In the caption of his complaint, Goodwin listed himself as the plaintiff, but in two different capacities. He commenced this action for himself, but also "on behalf of all other persons born-in and residing in the U.S. Virgin Islands." (Amend. Compl. 1.) When the Court, in its January 28, 2016 Order, asked Goodwin to clarify who his lawsuit encompassed, Goodwin explained in his February 25, 2016 supplemental brief that,

> [b]ecause this sentence is in the conjunctive using "and" it is to be construed as encompassing persons that were born in the U.S. Virgin Islands and also currently residing the U.S. Virgin Islands. There is no other way to read the sentence under legal principals [sic] of plain language and statutory construction. The word "and" is a conjunctive connector and the word "or" is a disjunctive connector. Merriam-Webster defines "and" as "a logical operator that requires both of two inputs to be present or two conditions to be met for an output to be made or a statement to be executed."

116

Though this matter is phrased in a terminology that would imply a class of people who benefit in the litigation of this matter, a class of people does not have to be created under FED. R. CIV. PRO. Rule 23 for those persons to benefit. Using Declaratory Judgment, one Plaintiff has the power to challenge an issue, even though the relief accorded to the Plaintiff will benefit many other persons. (Pl.'s Supp. Br. 4, filed Feb. 25, 2016 (quotation source not provided) (citing *Pate v. Gov't of the V.I.*, 62 V.I. 271, 291 (Super. Ct. 2015).)

Regrettably, Goodwin misunderstood the narrow issue the Court was raising.

 Through their common law rule-making authority, courts developed the canons of construction, many of which have since been codified by legislatures.[8] *See, e.g.*, 1 V.I.C. §§ 41-52. But all canons of construction — such as plain meaning, as Goodwin noted, but also repeal by implication, *expressio unius*, or *ejusdem generis*, and so forth — only apply when construing or interpreting a statute, *see, e.g., In re L.O.F.*, 62 V.I. 655, 661 n.6 (2015) ("[W]hen dealing with the *interpretation of a Virgin Islands statute*, courts must utilize the canons of statutory construction." (emphasis added)), or in some instances, when construing or interpreting rules of procedure. *See, e.g., Corraspe v. People*, 53 V.I. 470, 480-81 (2010) ("[A]lmost every rule of construction for statutes

---

[8] *See, e.g.*, Jacob Scott, *Codified Canons and the Common Law of Interpretation*, 98 GEO. L.J. 341, 344-45 (2010) (quotation marks, footnotes, citations, brackets, and ellipses omitted):

> Canons are integral to the process of interpretation. They have been used since antiquity, and their general contours have been remarkably stable over time. In Anglo-American law, courts and legal commentators have relied on canons since at least 1584, when Lord Coke laid out rules for the sure and true interpretation of all statutes in general . . . . The canons were echoed by Blackstone and now enjoy ascendancy among judges and legal scholars . . . .
>
> The common law should be understood to encompass judicial methodology in addition to the traditional substantive common law subjects, such as the law of torts. Black's Law Dictionary does not treat the canons as common law, saying that most jurisdictions treat the canons as mere customs not having the force of law. Such custom, however, is law-like. The common law of interpretation develops because methods of legal reasoning attach to results and weakly constrain judges in future cases. Like the development of the common law generally, common law interpretive rules develop by experience, including the felt necessities of the time, the prevalent moral and political theories, and intuitions of public policy, avowed or unconscious. . . . Over the centuries, judges have developed certain techniques for investigating legislative intent. Courts are, to some extent, bound by those methods of inquiry . . . .

finds application in the interpretation of the rules of practice." (quotation marks and citation omitted)). A complaint is not a statute or a court rule. What's more, Goodwin (through counsel) drafted his complaint, including the "sentence" the Court was asking about. So, Goodwin (not the Court applying common law or statutory canons of construction) needed to clarify his own plain meaning. Canons of construction do not apply to pleadings.

What the Court was asking about, was not how "and" should be construed in the caption, but whether Goodwin did intend to bring this action as a class action. If he did, then his request for ruling was premature.[9] *See* FED. R. CIV. P. 23(c)(2)-(3) (requiring, *inter alia*, that notice issue to prospective class members, members allowed to opt out of, and informed that judgment will bind class). Goodwin was closer to the mark when he noted in his February 25, 2016, brief that Federal Rule of Civil Procedure 23 could apply. But Goodwin failed to address any of the concerns the January 28, 2016 Order raised about whether class actions must be authorized by legislatures, not by courts. Instead, Goodwin concluded if he prevailed, his judgment would cover all of the citizens living in the Virgin Islands. This is a misunderstanding of the law.

■ "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam in* a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 U.S. at 40 (citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565 (1878)). Courts obtain power, or jurisdiction in other words, over the person of the plaintiff when he files his complaint or petition and over the person of the defendant when summons issues and process is properly served. But courts do not have power over all persons living within their jurisdiction, nor do the decisions courts render constrain everyone with the same or similar claims in that jurisdiction. Not unless, that is, due process is

---

[9] If Goodwin had sought to certify a class, then he would have had to clarify how the class should be defined. That is, whether he wanted to limit the class to persons born-in the U.S. Virgin Islands *and* still residing in the U.S. Virgin Islands, or persons born-in *or* residing-in the U.S. Virgin Islands. People born in U.S. Territories but who have moved and acquired residence in one of the fifty states or the District of Columbia can vote in national elections if they register. In contrast, persons who live in or move to a U.S. Territory (regardless of where they were born) cannot vote in national elections, unless they have retained their registration in that state or in the District of Columbia.

afforded to the class of persons thought to be bound by the court's decision. This is the class action or class suit, "a recognized exception that, to an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it." *Id.* at 41 (citations omitted). The Supreme Court of the United States explained further in *Hansberry* that:

> there is scope within the framework of the Constitution for holding in appropriate cases that a judgment rendered in a class suit is *res judicata* as to members of the class who are not formal parties to the suit. Here, as elsewhere, the Fourteenth Amendment does not compel state courts or legislatures to adopt any particular rule for establishing the conclusiveness of judgments in class suits; nor does it compel the adoption of the particular rules thought by this Court to be appropriate for the federal courts. With a proper regard for divergent local institutions and interests, this Court is justified in saying that there has been a failure of due process *only in those cases* where it cannot be said that the *procedure adopted*, fairly insures the protection of the interests of absent parties who are to be bound by it. *Id.* at 42 (citations omitted) (emphasis added).

It was with these concerns in mind, that the Court questioned whether Goodwin intended to pursue a class action. Goodwin's response was to cite to *Pate*. (*See* Pl.'s Supp. Br. 4-5 (citing *Pate*, 62 V.I. at 285-86). *Pate* concerned a challenge to a Virgin Islands statute that required all attorneys who practiced law in the Virgin Islands to obtain and maintain a business license from the Virgin Islands Department of Licensing and Consumer Affairs. *See id.* at 287 (citing 27 V.I.C. § 301). Attorney Russell Pate sued the Government of the Virgin Islands and the Department to obtain a declaratory judgment that neither he nor any of the other licensed attorneys practicing law in the Virgin Islands has to obtain a business license following the establishment of a supreme court for the Virgin Islands. *See id.* at 301-06. Pate argued that the license requirement was "not a tax but instead an attempt to regulate the practice of law," something the Department could no longer do since the Supreme Court of the Virgin Islands had been established. *Id.* at 278. Ultimately, the court in *Pate* found for the plaintiff and entered judgment, declaring that Department could not keep the license fee, but had to continue collecting

it "as a temporary tax until the Legislature has enacted a proper tax . . . or the Supreme Court has chosen to increase or reallocate attorneys' fees and dues." *Id.* at 324. Goodwin cites *Pate* here because, in finding for the plaintiff, the court noted that it had "held on December 11, 2014, that the determination of whether this case constitutes a valid class action need not be addressed. Since this matter involves both real and potential constitutional and statutory violations," the court reasoned, "any holding . . . will affect both Plaintiff and all 'attorneys similarly situated,' regardless of how the case is captioned." *Id.* at 294. But the December 11, 2014 decision did not address whether the case was validly brought as a class action. *See Pate v. Gov't of the V.I.*, ST-14-CV-479, 2014 V.I. LEXIS 112, at *19-20 (Super. Ct. Dec. 11, 2014).

What Goodwin fails to appreciate, however, is that *Pate* is not binding on this Court or any other court. None of the parties appealed.[10] Even though the judgment purportedly declared rights and obligations between all licensed attorneys and the Department of Licensing and Consumer Affairs, the only plaintiff in that action was Attorney Pate[11] and the only claim at issue was Attorney Pate's annual business license requirement. But, more importantly, since the court in *Pate* did not consider the due process implications of declaring rights of parties that were not brought within its *in personam* jurisdiction by joinder, summons, or any sort of notice to the prospective class, this Court rejects *Pate* as persuasive authority on to the question whether courts can issue a judgment and declare rights of parties without providing notice and an opportunity to be heard. *Cf. Hansberry*, 311 U.S. at 43 ("In all such cases, so far as it can be said that the members of the class who are present are, *by generally recognized rules of law*, entitled to stand in judgment for those who are

---

[10] Notably, even though Pate was the prevailing party, he still could have appealed to the Supreme Court of the Virgin Islands if only to have the Superior Court's decision affirmed. *Cf. Malloy v. Reyes*, 61 V.I. 163, 171 n.4 (2014) ("4 V.I.C. § 32(a) vests this Court with 'jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court' without restricting that jurisdiction only to appeals taken by aggrieved parties. Thus, the requirement that a party be aggrieved by a Superior Court ruling to have standing to appeal — to the extent it applies at all — is at best 'a claims processing rule' subject to waiver by the parties." (citing and quoting *Farrell v. People*, 54 V.I. 600, 607-08 (2011)).

[11] In fact, the court in *Pate* amended the caption of the complaint to clarify that only Pate was the plaintiff. *See Pate*, 62 V.I. at 294 ("[F]or simplicity, the Court's December 11, 2014, Order directed that the caption be changed to reflect only Plaintiff's name.").

not, we may assume for present purposes that *such procedure affords a protection* to the parties who are represented, though absent, which would satisfy the requirements of due process and full faith and credit. . . . [And] when the only circumstance defining the class is that the determination of the rights of its members turns upon a single issue of fact or law, a state could . . . constitutionally *adopt a procedure* whereby some of the members of the class could stand in judgment for all." (emphasis added)).

██ As of the writing of this Opinion, the Superior Court of the Virgin Islands has not promulgated a rule of procedure to allow one or more persons to form a class and represent the rights of others with the same or similar interests and then obtain a judgment binding on behalf of the class. The Legislature of the Virgin Islands has, however, authorized class action lawsuits, but only for violations of consumer rights.[12] Since " 'a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedent[ ] . . . reveals the absence of any other applicable [rule of] procedure,' " *Davis v. HOVENSA, LLC*, 63 V.I. 475, 482 n.7 (Super. Ct. 2015) (brackets omitted) (quoting *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 576 (2015), the Court could apply Federal Rule of Civil Procedure 23 (through Superior Court Rule 7), but then, only if the federal rule is " '[a] procedural rule . . . [not a] substantive rule of law.' " (Jan. 28, 2016 Order at 4 (quoting *Durant*, 49 V.I at 373-74, parenthetically).) Goodwin failed to address any of these concerns and essentially conceded that he is the only plaintiff in this action.[13] So, the Court deems all references to a class action lawsuit abandoned and amends the caption accordingly. *Cf. Pate*, 62 V.I. at 294.

Having resolved who the plaintiffs are, the Court turns next to the defendants. As noted, the Court ordered the caption amended to substitute Caroline Fawkes in place of John Abramson, Jr. This was done after the

---

[12] *See* 12A V.I.C. § 106 (class action for unfair trade practices); *id.* § 109 (procedural requirements for unfair trade practices class action lawsuits); *id.* § 331 (class action for consumer fraud and deceptive business practices); *id.* § 435 (class action for violations of the Uniform Debt-Management Services Act); *id.* § 291(a)(2) (class action for Rental-Purchase Agreement Disclosure Act violations); 13 V.I.C. § 344 (class action by creditors of corporation when corporate officials liable for debt); *see also* 28 V.I.C. § 653(a)(10) (declaring property received by court in class action unclaimed if not distributed by judgment in a year).

[13] In their opposition and motion, the Defendants pointed out that "this is not a class action as Plaintiff has not followed any of the requirements set forth in Rule 23" and then concluded that Goodwin "is the only plaintiff in this action." (Defs' Opp'n & Mot. to Dismiss 1 n.1, filed July 13, 2012.)

121

January 28, 2016 Order, which had alerted Goodwin that John Abramson, Jr., does not hold the position of Supervisor of Elections any longer, and after Goodwin failed in response to move to substitute Caroline Fawkes as the proper party. (*See* Order 2, entered Mar. 22, 2016 (amending the caption but noting that "[w]hile . . . courts do have the power to amend captions *sua sponte* . . . [it should not] fall[ ] to the court . . . in the *first instance* [to order the amendment]" (emphasis added)).) Whether "Election System of the U.S. Virgin Islands" is a proper party is a more difficult question.

The Revised Organic Act of the Virgin Islands provides that the Government of the Virgin Islands has "the right to sue by such name and in cases arising out of contract, to be sued: Provided, that no tort action shall be brought against the Government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature constituted by this Act." 48 U.S.C. § 1541(b). Of course, the Government of the Virgin Islands includes "not only the executive departments and the departmental boards and commissions, but also the independent boards, agencies, authorities, commissions and other instrumentalities required by Federal law for participation in Federal programs." *V.I. Hous. & Redevelopment Auth. v. 19.1078 Acres of Land in St. Thomas, V.I.*, 161 F. Supp. 475, 3 V.I. 309, 315 (D.V.I. 1958). However, Goodwin did not sue the Government of the Virgin Islands directly. Instead, Goodwin sued John Abrahamson, Jr., and the Election System. So, the question becomes whether the Supervisor of Elections, or more importantly, the Election System of the Virgin Islands, can be sued for damages or for declaratory relief. In other words, is the Election System (however named in a lawsuit) an independent board or agency of the Virgin Islands Government.

Goodwin's response to this question was: "[t]he Elections System of the Virgin Islands has been sued many times. No court has ever found that it does not have the capacity to sue or to be sued." (Pl.'s Supp. Br. 2; *see also id.* at 3 ("The Elections System of the Virgin Islands has been sued (and brought suit) under the names of the Elections System of the Virgin Islands, Joint Board of Elections, Board of Elections, St. Croix District, Board of Elections, St. Thomas District, and also as the Government of the Virgin Islands." (citing *Hansen v. O'Reilly*, 62 V.I. 494 (2015); *Haynes v. Ottley*, 61 V.I. 547 (2014); *Mapp v. Fawkes*, 61 V.I. 521 (2014); *St. Thomas-St. John Board of Elections v. Daniel*, 49 V.I. 322 (2007);

*O'Reilly v. Bd. of Elec.*, 61 V.I. 118 (Super. Ct. 2014); *Bryan v. Abramson*, 60 V.I. 3 (Super. Ct. 2010); *Haynes v. Ottley*, Civ. No. 2014-70, 2014 U.S. Dist. LEXIS 154161 (D.V.I. Oct. 28, 2014); *Richards v. Abramson*, Civ. No. 2012-21, 2013 U.S. Dist. LEXIS 19438 (D.V.I. Feb. 13, 2013); and *Clarke v. Ross*, 57 V.I. 737 (D.V.I. 2012)).)

> [I]f the Elections System is not an instrumentality of the Government, [Goodwin asked,] then why is the V.I. Department of Justice spending Government tax monies on providing the Elections System of the Virgin Islands a government defense through the use of Assistant Attorney Generals? If the Elections System is a private entity and has no relation to the Virgin Islands Government, then private (non-government) counsel should have properly been retained. Nevertheless, the Government of the Virgin Islands has provided counsel and a legal defense for the Elections System of the Virgin Islands. Further, the Elections Systems receives its funding and support from the Government of the Virgin Islands. In fact, its own website is a Government website www.vivote.gov which uses a government domain identifier. Last, the Elections System issues documents to voters and the public in its own name. *Id.* at 2-3.

Goodwin concluded his arguments by directing the Court to a 2016 Elections Event Calendar, which was attached to his brief. Fawkes issued that calendar, which is titled "Elections System of the Virgin Islands, 2016 Elections Calendar," and which, like the website, depicts a seal or logo for the Elections (plural) System of the Virgin Islands. *See id.* at Ex. A. But, once again, Goodwin misunderstood the concern.

The January 28, 2016 Order sought only to clarify whether "Election Systems of the U.S. Virgin Islands" was the proper party to be named in this lawsuit. This concern was raised alongside the other concerns regarding technical defects with Goodwin's complaint to wit: whether he brought this matter as a class action; whether the injunctive relief count was still viable since the defendants' time to remove this case to federal court had passed;[14] whether Fawkes should be substituted for Abramson; whether Goodwin had amended his complaint since the case file and docket did not reflect that he had; and also, whether the Election System

---

[14] *See supra*, note 4.

should be listed as a defendant. The cure to most of these concerns would have been to simply request leave to amend the complaint to correct the caption, substitute the proper parties, and remove abandoned claims. But Goodwin did not seek leave to amend.[15]

In responding to the concern about whether "Election System" was a proper person to be listed as a defendant (rather than the St. Croix Board of Elections, for example, or the Virgin Islands Joint Board of Elections), Goodwin indirectly raised a different, and important, issue: whether the Election System has the capacity to sue or be sued, particularly since Goodwin brought this suit — not for personal injury or breach of contract — but rather for violations of the Fourteenth Amendment and the Fifteenth Amendment and also for declaratory relief. Goodwin had already touched on this issue in his declaratory judgment motion. (*See* Pl.'s Mot. for Decl. Jgmt. 2, filed June 27, 2012 ("Goodwin filed this civil action against the only *body politic* in the Territory with jurisdiction over elections, the Elections System of the U.S. Virgin Islands, *suable through* its Board, and against its Supervisor John Abramson, Jr., in his official capacity." (emphasis added)).)

Section 252 of Title 2 of Virgin Islands Code refers to the "Virgin Islands Election System" within the definition of the entities who receive monies from the Territory's general fund. *See* 2 V.I.C. § 252(5) (" 'General Fund' means the principal fund of the Government, financing the three branches of Government, the Virgin Islands Election System, the University of the Virgin Islands, and other such *entities* as may be deemed appropriate." (emphasis added)). This statute certainly implies that the Election System is an entity like the University of the Virgin Islands or the Government of the Virgin Islands, itself. But another statute, Section 4 of Title 18 of the Virgin Islands Code, directs that the Joint Boards of Elections:

> shall be the policy-making body of the Virgin Islands Elections System and shall exercise supervisory control through the Supervisor of Elections who shall be responsible for executing the mandates of the Joint Boards. All employees of the election system shall be responsible to the Joint Boards of Elections through the Supervisor of Elections. No employees of the election system shall report to or take instructions

---

[15] It should be noted that the Court did not order the Plaintiff to amend his complaint.

124

from the Joint Boards of Elections, except through the Supervisor of Elections. 18 V.I.C. § 4(a).

Here, the references to "Election System" appear to be used more generally and not to the election system as an independent or quasi-independent entity, but more like the references to the "Virgin Islands Education System," 3 V.I.C. § 321(a), or the "Virgin Islands court system." 4 V.I.C. § 4(a). In contrast, the Legislature did establish the Government Employees Retirement System as a separate, corporate entity, *see* 3 V.I.C. § 701(c), and likewise established the Virgin Islands Public Broadcasting System as a "body corporate and politic constituting a public corporation." 30 V.I.C. § 201(a).

Whether the Election System has capacity to sue and be sued, separate and apart from the Government of the Virgin Islands, is not simply academia. *Cf. Cyprian v. Butcher*, 53 V.I. 224, 227-28 (Super. Ct. 2010) ("[T]he Legislature by endowing WAPA from the time of its inception with the general power 'to sue and be sued,' thereby, also categorically waived WAPA's claim to sovereign immunity made generally applicable to the Government of the Virgin Islands by Congress in the Revised Organic Act." (citing *Rosa v. V.I. Hous. Auth.*, 43 V.I. 131, 136 (Terr. Ct. 2001). If the Election System was established as a public or quasi-public corporate entity, then it would be a proper party in this case. *See* 5 V.I.C.§ 1142(a)-(b). However, public corporations and other *bodies politic* must generally be given capacity to sue and be sue by statute. *Cf.* 30 V.I.C. § 150 (authorizing the Virgin Islands Water and Power Authority as public corporation with the right to adopt a corporate seal and to sue and be sued in its corporate name); 17 V.I.C. § 332(a) (authorizing the Virgin Islands Hospitality Training School to adopt a seal and sue and be sued as a public corporation). Notwithstanding the electoral system may have adopted its own logo or a seal, or that Section 252 of Title 3 refers to the Virgin Islands Election System as an "entity," nowhere else in the Virgin Islands Code or the Revised Organic Act is the Election System established as public corporation or as a *body politic*. *Cf.* 48 U.S.C. § 1572(c) ("All officers and employees charged with the duty of directing the administration of the *electoral system* of the Virgin Islands and its representative districts shall be appointed in such manner as the legislature may by law direct: *Provided, however,* That members of boards of elections, which *entities of government have been duly organized and established* by the government of the Virgin Islands, shall

be popularly elected." (first and last emphasis added)). *See also Bryan v. Fawkes*, 61 V.I. 201, 216 (2014) ("[S]ection 6(c) of the Revised Organic Act, as well as the local statutes enacted by the legislature pursuant to that provision, contemplates that an elected Board of Elections will administer the elections system."); *Goodwin v. Abramson*, 43 V.I. 89, 92 (Terr. Ct. 2000) ("The Board is responsible for running and operating the election system in the Virgin Islands."). Additionally, whether precedent can establish capacity to sue or be sued is unclear. *Cf. Callwood v. Super. Ct. of the V.I.*, ST-09-CV-499, 2014 V.I. LEXIS 105, at *4-8 (Super. Ct. Oct. 29, 2014) (considering and rejecting similar arguments about the Superior Court's capacity to sue and be sued based solely on prior lawsuits brought by and against the court and concluding that the Government of the Virgin Islands should at least be joined as a party out of an abundance of caution). But if it can, the one instance in which the Election System was named as a defendant is insufficient. *See Richards*, 2013 U.S. Dist. LEXIS 19438, at *1 (Election System named as a defendant, but along with Government of the Virgin Islands and Supervisor of Elections).

Nevertheless, even though the Election System may not be a proper party here, the Supervisor of Elections certainly is. *Cf. Heller v. Legis. of Nev.*, 120 Nev. 456, 93 P.3d 746, 750 (2004) ("A public officer's capacity to sue [or be sued] is incident to the duties of the office." (footnote omitted)). As in *Callwood*, the Court could join the Government or substitute either the St. Croix Board of Elections, or perhaps the Virgin Islands Joint Board of Election given that Goodwin's claims concern the whole Territory. The Court accepts Goodwin's request to take judicial notice that the Virgin Islands Department of Justice has represented Abramson and now Fawkes as well as the "Election System" and would most likely represent the Government, the St. Croix Board of Elections, or the Joint Board of Elections if any were joined. But unlike *Callwood*, the Court does not find it necessary here to join these entities. In light of the uncertainty whether the Virgin Islands Election System has capacity to be sued,[16] and out of an abundance of caution, the Court will allow the

---

[16] *Compare Wellington v. Mahoning Cnty. Bd. of Elections*, 117 Ohio St. 3d 143, 2008 Ohio 554, 882 N.E.2d 420, 427 (2008) ("Boards of elections have duties set forth . . . the Revised Code. There is no precedent or argument that boards of elections are not *sui juris*." (citation omitted)), *with, Burke v. Pasquotank Cnty. Bd. of Elections*, 2:08-cv-022, 2010 U.S. Dist. LEXIS 20679, at *9-10 (E.D.N.C. Feb. 12, 2010) ("The enabling statutes for the North Caro-

Election System to remain as a named defendant, but will order the caption amended in accordance with this opinion.

## II. Substantive Discussion

■ Turning next to the merits, the Court has before it two motions, ostensibly seeking opposite results, but in fact seeking the same result. To explain, Goodwin motioned for declaratory judgment, before the Defendants had filed their answer. However, declaratory judgment cannot be granted on motion, unless the motion is a dispositive motion. *Cf. Estate of George v. George*, 50 V.I. 268, 274-75 (2008). *Estate of George* involved an interlocutory appeal from an order denying a motion for declaratory judgment, but a motion that was filed within a probate proceeding. *See id.* at 270. In dismissing the appeal for lack of jurisdiction, the Supreme Court of the Virgin Islands explained a declaratory judgment action is commenced, like any other civil action, by filing a complaint, not by filing a motion in another case. *See id.* at 274-75. By analogy then, if a declaratory judgment action must be commenced like any other civil action, then the judgment in a declaratory judgment action must also issue like in any other civil action. If declaratory judgment is to be granted on a motion, it must be a dispositive motion. Here, however, Goodwin did not move for judgment on the pleadings. He could not because his motion was filed on June 27, 2012, two weeks before the Defendants filed their answer on July 13, 2012.[17] He also did not move for summary judgment because he did not submit anything in support of his motion. Hence, what is before the Court is a motion for judgment, but without any evidence, affidavits, or any other materials in support of the claims in the complaint.

lina county boards of elections do not confer on them the capacity to sue or be sued. The court therefore concludes that defendant is not subject to suit in its own name." (internal citation omitted)); *Shull v. Bexar Cnty.*, No. 04-99-00286-CV, 2000 Tex. App. LEXIS 41, at *6-7 (Ct. App. Jan. 5, 2000) (affirming trial court dismissal Bexar County Elections due to lack of capacity to be sued independent of the county)).

[17] The Court does acknowledge that Goodwin states in his motion that "[t]he Amended Complaint was filed on October 3, 2011 and Defendants *timely answered it.*" (Pl.'s Mot. for Decl. Jgmt. 2, filed June 27, 2012 (emphasis added).) But both the electronic docket and the case file reflect that the Defendants filed "their answer to Plaintiff's Amended Complaint" on July 13, 2012. (*See* Defs.' Ans. 1, filed July 13, 2012.) Perhaps the Defendants timely served Goodwin with a copy of their answer. But a document is not filed until it is filed with the clerk.

127

■ In contrast, the Defendants moved to dismiss Goodwin's complaint for failure to state a claim, but after filing their answer and without explaining their untimely appearance or requesting that their default be excused.[18] Instead, the same day that they filed their answer, July 13, 2012, they also filed their response in opposition to Goodwin's motion and moved to dismiss Goodwin's complaint for failure to state a claim. By answering Goodwin's allegations and also moving for a determination on the merits of his claims, the Defendants too are seeking judgment, but on the pleadings. "[A] post-answer motion to dismiss for failure to state a claim [must] be considered as a motion for judgment on the pleadings, which would be subject to the same legal standard," unless the motion attempts to resurrect a waived or forfeited defense. *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536 (2015) (citing *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 565 (2012)). In their motion, the Defendants do not dispute the historical or political allegations Goodwin pleaded in his complaint, nor do they oppose his claim that Virgin Islanders should have the right to vote in national elections. Rather, Defendants contend that Goodwin's complaint should be dismissed because they did nothing wrong and, further, because neither the Superior Court — nor the Joint Board of Elections even if Goodwin were to prevail — can grant the relief he seeks. Consequently, the Court has before it two motions, both of which request judgment.

■ Further complicating matters is the fact that granting one motion will render the other motion moot. That is, if Goodwin's motion was granted, it would mean that he is entitled to judgment and, therefore, has stated a claim. This would moot the Defendants' motion. In contrast, Goodwin's motion would be rendered moot if the Defendants were correct that they should be granted judgment on the pleadings. Presumably, the Court could, in its discretion and mindful of limited

---

[18] Notably, entering default is an important, but ministerial, task the Clerk performs typically on motion but perhaps *sua sponte* as well. Parties are still in default, however — including the Government of the Virgin Islands, *cf. Villa v. Lawrence*, 16 V.I. 541, 547 (Terr. Ct. 1979) ("Although . . . [the rules] prohibit[ ] default judgments against the Government, nothing in the rule[s] prohibits the entry of a formal default."); *accord Callwood v. Zurita*, 158 F.R.D. 359, 31 V.I. 157, 161 n.6 (D.V.I. 1994) ("entering default against the Government as a sanction" not precluded) — if they do not appear within the allotted time and either answer the complaint or request additional time, or move to dismiss or to quash service. Here, Goodwin did not object (and also failed to submit proof of service), so objection to the Defendants' untimely appearance would be waived.

resources, address only the motion that it finds will dispose of the case. But the "failure to address an argument" — or a motion, presumably, since arguments are raised either in written motions or in open court — "constitutes grounds for reversal." *Gerace v. Bentley*, 65 V.I. 289, 297 (2016) (citations omitted). How courts should proceed when presented with competing motions is a gray area, and thus, considering the seriousness of the concerns Goodwin raises, the Court will address each motion separately.

### a. Motion for Declaratory Judgment

■ " 'An action for declaratory judgment is a civil action, having the character of a special proceeding, created by statute.' " *Estate of George*, 50 V.I. at 274 (quoting 28 C.J.S. *Declaratory Judgments* § 108 (2008) parenthetically). Courts in the Virgin Islands have the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 5 V.I.C. § 1261. Judgments declaring rights and legal relations can "be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree." *Id.* A court's power to issue a declaration of rights between parties is limited only to the question whether issuing "a judgment or decree will terminate the controversy or remove an uncertainty." *Id.* § 1265. But courts may also, in their discretion, "refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." *Id.* § 1266. "[A]n action for a declaratory judgment is regarded as an ordinary civil action . . . commenced by filing a complaint with the clerk." *Estate of George*, 50 V.I. at 274 (quotation marks, citations, emphasis, and ellipsis omitted).

In his motion, Goodwin "requests that this Honorable Court issue a declaratory judgment on the racist deprivation of the right to vote and [o]rder that the Election System of the U.S. Virgin Islands take certain measures to enfranchise the United States Citizens residing in the U.S. Virgin Islands." (Pl.'s Mot. for Decl. Jgmt. 1, filed June 27, 2012.) He then "sets forth [an] undisputed statement of facts," *id.* at 3, taken from his complaint, the Defendants' answer, as well as articles from the Huffington Post and the Los Angeles Times attached to his motion. He contends that,

> [e]ssentially, there are no issues of disputed fact. The only issue at law is whether the Election System of the Virgin Islands has a statutory

duty under Virgin Islands law to apply the United States Constitution and correct historical racism and discrimination. . . . The Defendants do not deny that they do not place on the ballot an option for voting for the President, [Goodwin argues,] nor do they deny that they have not advised or promulgated any rules or procedures for such a vote. These voting ballot omissions are the wrongdoing. . . . [And t]his case is about the wrongful denial of the most sacred right a U.S. Citizen possesses — the right to vote for his or her leaders — in violation of the Fifteenth Amendment of the Constitution and the Congressional statute passed pursuant the Fifteenth Amendment, known as the Voting Rights Act Courts have authority to rule on such cases . . . . [And, n]ot only can the judiciary rule, but they must not shirk the responsibility to do so. *Id.* at 5-6, 9-10 (citations and footnotes omitted).

In their response,[19] the Defendants point out that Goodwin "has not pled any allegations of wrongdoing by Defendants. Nowhere in Plaintiff's complaint has he alleged that Defendants failed to perform an act that they had a duty to perform." (Defs.' Opp'n & Mot. to Dismiss 5, filed July 13, 2012.) Instead, the Plaintiff "argues that Defendants do not place on the ballot the option of voting for the President and have not advised or promulgated any rules or procedures for such a vote." *Id.* at 6. But "[t]hese purported assertions of wrongdoing are not alleged in any of the counts of the Amended Complaint," the Defendants argue, and Goodwin "cannot amend his complaint through his motion for declaratory judgment." *Id.*

Goodwin did not file a reply in support of his motion, at least not apart from arguments in his response filed in opposition to the Defendants' motion. However, he did file an informative motion in response to questions the Court raised at the July 16, 2012 hearing, which the Court will construe as a reply. In this filing, Goodwin contends that this

---

[19] In *Der Weer v. Hess Oil Virgin Islands Corporation, et al.*, 64 V.I. 107, 129 (Super. Ct. 2016), another judge of the Superior Court explained that "[w]ritten motions should be filed separately and not be embedded within other motion papers." This Court agrees. Here, for example, it is almost impossible to distinguish between the arguments the Defendants make against Goodwin's motion and the arguments they make in support of their own motion. The movant carries the burden of persuasion. Commingling arguments against one motion with arguments in a support of another motion in the same motion paper is improper.

Court is looking at an issue never brought before, that the U.S. Virgin Islands and its citizens — who are citizens of the United States — were denied the fundamental right to vote for President and Congressional representatives due to the entrenched racism of 1917. . . . [T]his Court has the power to remedy this long standing Constitutional violation by [o]rdering . . . the Election System of the U.S. Virgin Islands to tally votes for presidential candidates and send those votes to Washington, D.C. and, further, to establish procedures for the election of a Congressperson and two U.S. Senators. Those duly elected shall be sent to Washington, D.C., to be seated appropriately in the House and Senate. (Pl.'s Not. of Compliance with Ct.'s Oral Order & Inf. Mot. 4-5, filed Sept. 7, 2012 (footnote omitted).)

After briefing on both motions had ended, Goodwin filed the thirteen notices stated *supra*, along with all of the materials attached thereto or referenced therein: newspaper articles, a book, a television show uploaded to YouTube, presentations by judges, and so forth. When the Court asked Goodwin what "the purpose for these notices [is] and whether [he] is seeking to have the content added to the record," (Jan. 28, 2016 Order 6), Goodwin's response was that the "[n]otices . . . can be utilized by this [C]ourt under judicial notice or as evidence to supplement the complaint." (Pl.'s Supp. Br. 7 (citing *Pate*, 62 V.I. at 289-90).)

*Pate* is similar to this case in that, there too the plaintiff submitted materials outside the pleadings through notices and without leave of court. *See* 62 V.I. at 289-90 ("Defendant seeks to strike Plaintiff's February 6, 2015, Notice of Supplemental Exhibits to 'Exhibit E' of the Plaintiff's Complaint, arguing that the additional exhibits are an attempt to amend the Complaint without leave of Court or opposing part[y]'s written consent"); *id.* at 291 ("Defendant argues that Plaintiff's notice of filing the testimony before the Virgin Islands Legislature of . . . [the] Commissioner Designee for DLCA, is not an attempt to supplement the record but is instead a sur[response] in the guise of a notice without leave of the Court to do so." (quotation marks and citation omitted)). But, unlike in *Pate*, the Defendants did not object here.

█ That does not mean the materials come in. A "notice is not a motion, and should not be so treated." *Herrlich v. McDonald*, 80 Cal. 472, 22 P. 299, 299 (1889); *see also State ex rel. Vocovitch v. Votaw*, 16 Mont. 308, 40 P. 597, 597 (1895) (per curiam) ("A notice of motion is not a

motion."). A notice does not invite a response in opposition or a reply. *Cf.* LRCI 7.1. Notices are neither granted nor denied (or dismissed). *Cf. Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 611 (2012) ("if a plaintiff effectuates an unconditional voluntary dismissal . . . the action *terminates immediately upon filing . . . notice* with the Clerk . . . and neither the judge nor the plaintiff will possess the ability to undo the dismissal." (emphasis added)). Here, the concern with trying to submit additional materials through notices, rather than on motion, is that record could be unclear and might not show what the court relied on in granting or denying a motion or some other request. *Cf. Herrlich*, 22 P. at 299 ("The careful practitioner will . . . prepare and file his motion in writing, stating the grounds thereof, or . . . [the] motion may be made orally, but in every case, whether the motion is made in writing . . . or stated orally, the same should be preserved . . . [in] the record [showing] that a motion was made, and the ground upon which it was made."). And frankly, this concern permeates throughout Goodwin's case.

■ Unlike the *Pate* Court, this Court is not inclined to construe the thirteen notices (along with the information and materials submitted) as a motion (or motions) to amend the complaint. *Contra* 62 V.I. at 290. Nor will this Court admit the materials into evidence through judicial notice. Judicial notice is not a cure-all for lazy lawyering. *Cf. Colon-Andino v. Toledo-Davila*, 634 F. Supp. 2d 220, 228 n.12 (D.P.R. 2009) ("As the complaint now reads, the plaintiffs' attorney has failed to label claims diligently or properly, leaving them implied or suggested by the narrative of alleged facts, such that those claims must now be properly identified by this Court. The liberal nature of Rule 8(e) is no defense for lazy lawyering."); *Meredith v. La. Health Serv. & Indem. Co.*, Civ. No. 08-795, 2012 U.S. Dist. LEXIS 27011, at *16 n.5 (M.D. La. Mar. 1, 2012) (rejecting defendant's attempt "to 'dump the entire administrative record' into the court record, which amounted to 'lazy lawyering.' "). "[T]he Superior Court may take judicial notice of a fact," but only if the fact is known generally "in the territory or . . . is capable of being readily determined accurately by relying on sources whose accuracy cannot be questioned reasonably." *Rodriguez v. Rodriguez-Ramos*, 64 V.I. 447, 457 (2016) (citation omitted).

■ ■ Assuming, *arguendo*, that the Court did take judicial notice and accept all of the materials Goodwin submitted — to show that racism has permeated the United States, to show that the "powers that be" did not

want Virgin Islanders (or anyone else born in an overseas territory of the United States) to vote, and to show that, while race may have been the cause, the effect now is that all Americans regardless of their race are denied the right to vote if they live in or move to a territory — Goodwin still could not prevail because Goodwin did not submit any evidence. In short, the Plaintiff asks the Court to declare his rights (and the rights of all other Virgin Islanders) to vote in national elections based solely on the allegations in his complaint and the arguments of his counsel. But neither his complaint nor his amended complaint was verified. Unsworn representations of counsel are not evidence. *Henry v. Dennery*, 55 V.I. 986, 994 (2011). Moreover, Goodwin did not allege his race in his complaint or that he is registered to vote in the Virgin Islands. When the Court raised these issues during the February 5, 2016 hearing, Goodwin's response, filed February 9, 2016, was another unsworn representation of his counsel providing what is purported to be his client's voter ID number and the unabashed assertion that the Court could "take judicial notice" yet again "of [Goodwin's] appearance at the . . . hearing where [he] was present a[t] plaintiff's counsel table" and, in essence, that Goodwin is Black. (Pl.'s Not. to Ct. 1, filed Feb. 9, 2016.)

██ Contrary to Goodwin's belief, it is not the duty of this Court or any court to "amend the pleadings to . . . cure . . . [non-technical] defect[s] in order to reach a ruling on the merits." *Id.* Admittedly, not alleging race might not be a fatal defect since Goodwin is attempting to ground his voting rights claim in historical, not present-day, racism and show that all Virgin Islanders (even white Virgin Islanders) are being harmed now because of racism. The one flaw that this Court does find fatal is Goodwin's failure to allege (and then prove since he, as the moving party, has the burden) that he is registered to vote in the Virgin Islands. Courts simply cannot take it upon themselves to prove the plaintiff's allegations for him, no matter how sympathetic or how disturbing the allegations.

Goodwin's case should have proceeded like any other civil action. *Cf. Estate of George*, 50 V.I. at 274. When the Court issued its May 16, 2012 Order to notify Goodwin that there had not been any movement in the eight months since he filed his complaint, he did not request that a scheduling order issue. *See* SUPER. CT. R. 38 (pre-trial procedure (including discovery) not mandatory in all civil actions but may be allowed *sua sponte* or on motion); SUPER. CT. R. 39 (depositions and discovery, if allowed, shall follow federal rules of civil procedure).

133

Instead, Goodwin responded by skipping every procedural step that follows the filing of a complaint and proceeding straight to judgment — but without conducting discovery, deposing witnesses, or even obtaining expert testimony to help establish or even put in context the historical and political background of his claims.[20] Consequently, Goodwin's motion comes without evidence. Moreover, almost all of the additional materials he submitted could not help him prove his case because it would not be admissible at trial.[21] Ergo, Goodwin's motion must be denied.

---

[20] *Cf. United States v. Kantengwa*, 781 F.3d 545, 560-63 (1st Cir. 2015) (discussing benefits and concerns with admitting expert testimony from political scientist and historian concerning Rwandan genocide); *see generally Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 932 (N.D. Cal. 2010) ("The parties were given a full opportunity to present evidence in support of their positions. They engaged in significant discovery, including third-party discovery, to build an evidentiary record."), *aff'd sub nom. Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacated and remanded sub nom. Hollingsworth v. Perry*, 570 U.S. 693, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013); *Briggs v. Elliott*, 98 F. Supp. 529, 540 (D.S.C. 1951) (Warren, J., dissenting) ("The plaintiffs have brought a large number of witnesses exclusive of themselves. As a matter of fact, they called and examined 11 witnesses. . . . It certainly appears that large expenses must have been caused by the institution of this case and great efforts expended in gathering data, making a study of the issues involved, interviewing and bringing numerous witnesses, some of whom are foremost scientists in America. And in addition to all of this, these 66 plaintiffs have not merely expended their time and money in order to test this important Constitutional question, but they have shown unexampled courage in bringing and presenting this cause at their own expense in the fact of the long established and age-old pattern of the way of life."), *rev'd on other grounds Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 301, 75 S. Ct. 753, 99 L. Ed. 1083, 71 Ohio Law Abs. 584 (1955); *Belton v. Gebhart*, 32 Del. Ch. 343, 87 A.2d 862, 864 (1952) ("Plaintiffs produced many expert witnesses in the fields of education, sociology, psychology, psychiatry and anthropology. Their qualifications were fully established. No witnesses in opposition were produced. One of America's foremost psychiatrists testified that State-imposed school segregation produces in Negro children an unsolvable conflict which seriously interferes with the mental health of such children."), *aff'd, Brown*, 349 U.S. at 301.

[21] *See, e.g., Hicks v. Charles Pfizer & Co.*, 466 F. Supp. 2d 799, 804-05 (E.D. Tex. 2005) ("Generally, newspaper articles are classic, inadmissible hearsay and are unusable to defeat summary judgment. Newspaper articles are hearsay when offered to prove the truth of the matter asserted. They are not sworn or certified, and the authors are not subject to cross-examination, rendering such articles incompetent summary judgment evidence. Thus, any statements made or alluded to in newspaper articles ordinarily cannot be considered as evidence for summary judgment purposes." (citations and quotation marks omitted)); *Hueston v. City of New York*, 00-cv-9512, 2005 U.S. Dist. LEXIS 253, at *13 (S.D.N.Y. Jan. 7, 2005) (holding New York Law Journal article inadmissible as hearsay but may be used to show effect on parties); *Wilson v. Upjohn Co.*, 808 F. Supp. 1321, 1323 n.2 (S.D. Ohio 1992) ("[M]uch of what the Plaintiffs, *once again*, submit as 'evidence,' is clearly inadmissible hearsay. The Plaintiffs offer in support of their motion, newspaper and magazine articles,

### b. Motion for Judgment on the Pleadings

 "A motion for judgment on the pleadings should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Benjamin*, 56 V.I. at 566 (quotation marks and citations omitted). In ruling on a motion for judgment on the pleading, the Court "views the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff." *Id.* (quotation marks, brackets, and citation omitted). Like a motion to dismiss for failure to state a claim, the Court is also "foreclosed from considering evidence from any source outside of the pleadings and the exhibits attached to the pleadings in determining whether . . . to grant a motion for judgment on the pleadings." *Id.* (citation omitted).

In their motion, the Defendants argue that:

> [t]o bring a claim for racial discrimination Plaintiff ha[d] to allege his race and specifically assert that he is being denied the right to vote because of his race. It is insufficient for him to merely allege "racism against a jurisdiction." . . . Courts repeatedly held that general allegations that the law is not being followed by government officials are insufficient to confer standing to sue and that a taxpayer cannot use the court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power. (Defs.' Opp'n & Mot. 7 (citing *Ballentine v. United States*, 486 F.3d 806, 814, 48 V.I. 1059 (3d Cir. 2007); *Julien v. Gov't of the V.I.*, 961 F. Supp. 852, 856, 36 V.I. 165 (D.V.I. App. Div. 1997) (per curiam)) (other citations omitted).)

Regarding Goodwin's third claim for relief, the Defendants contend that Goodwin's "request is well-intentioned and laudable," and they "do not disagree with his ultimate objective," but they argue that "legal precedent, binding on this Court, has held that U.S. citizens residing in the Virgin Islands do not have the constitutional right to vote in a presidential election." *Id.* at 9-10. Thus, "[t]he Superior Court is bound by, and must follow, the decisions in the *Insular Cases*," the Defendants argue, because

---

television show transcripts . . . and other such matter. . . . It is unquestionably improper to consider such information for purposes of this motion." (citations omitted)).

only "the Supreme Court of the United States . . . has the 'prerogative of overruling its own decisions.' " *Id.* at 10 (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989)). Lastly, and perhaps most importantly, the Defendants argue that this Court cannot grant the relief Goodwin requests.

> Neither the Elections Systems nor [the Supervisor of Elections] has the authority to carry out the relief Plaintiff is requesting. The Supervisor of Elections is subject to the direction, control and supervision of the boards of elections. The duties of the Supervisor of Elections are set forth in [the Virgin Islands Code]. Governmental entities only have such powers as are granted to them by statute. Since the . . . President of the United States and representatives to the House and Senate in Congress are federal offices, and the Virgin Islands is a Territory only, Congress has the power to direct the territorial government to institute procedures in the Virgin Islands so as to allow residents to vote for President of the United States and other Congressional offices. Thus, the Court has no authority to order Defendants to perform duties that they have no statutory authority to perform. *Id.* at 8 (citations and foot-note omitted).

In response, Goodwin argues that "[t]he Defendants do not deny there is no ballot option for voting for the President, Senators, or a Congressperson, nor do they deny that they have not advised or promulgated any rules or procedures for such a vote. These omissions are the 'wrongdoing.' " (Pl.'s Opp'n to Defs.' Mot. 3, filed Sept. 7, 2012.) It is for this reason, he contends, that he sued "the entity charged with running elections, i.e., the Election System of the U.S. Virgin Islands, inclusive of its Supervisor and Board." *Id.* And if his "allegation[s] of wrongdoing [are] not apparent from the Second [sic] Amended Complaint . . . the appropriate remedy would be to permit an amendment to the pleading rather than the more draconian measure of dismissal." *Id.* Concerning the Defendants' assertion that the Court is powerless to grant relief, Goodwin rejects it, reiterating that he has:

> alleged that the denial of the right of to vote in the Territory stems directly from the racist and discriminatory factors acknowledged by the United State[s] Congress to be prevalent in 1917. This discriminatory treatment has continued, unabated and unrectified to the present day due to the inaction of the Election System of the Virgin Islands.

These allegations of racism have not been denied by Defendants. They can be accepted as true by this Court for purposes of this motion. *Id.* at 8-9 (footnote omitted).

[What's more, the Defendants' contention] that this Court has no power to challenge a rule based upon insidious racism . . . is incorrect. Though rarely done — and in extraordinary circumstances — some inferior courts have challenged the U.S. Supreme Court — and prevailed. *Id.* at 10.

In support, Goodwin points to "a little known trial court" decision from "New Castle, Delaware" in which the court "acknowledge[d] that a final rejection of *Plessy* [*v. Ferguson*, 163 U.S. 537, 16 S. Ct. 1138, 41 L. Ed. 256 (1896),] must come from the nation's highest court, yet that did not stop the [Delaware c]ourt from providing an appropriate local remedy in the interim." *Id.* at 10-11 (citing *Belton v. Gebhart*, 32 Del. Ch. 343, 87 A.2d 862 (1952)).

The Defendants, in their reply, note that "because the Virgin Islands is not a state but rather an incorporated territory, it is not entitled to appoint electors." (Defs.' Reply 1, filed Sept. 21, 2012.). "[I]t is the Constitution itself that does not grant citizens residing in territories the right to vote for President and Vice President, [so] the denial cannot be unconstitutional." *Id.* "[T]he solution is not in the Courts of the Virgin Islands, but rests with Congress," they argue. *Id.* at 3. And even if the Fifteenth Amendment is applicable, it cannot help Goodwin. "Courts that have looked at the Fifteenth Amendment as an avenue for citizens residing in territories to gain right to vote in Presidential Elections have rejected that argument." *Id.* (citing *Romeu v. Cohen*, 265 F.3d 118 (2d Cir. 2001)).

 ██ The Defendants are, in large part, correct. Even assuming the truth of all of the factual claims Goodwin makes in his complaint, *cf. Smith v. Liger*, SX-15-CV-345, 2016 V.I. LEXIS 156, at *2 (Super. Ct. Oct. 3, 2016), Goodwin still cannot prevail because "[t]he individual citizen has no federal constitutional right to vote for electors for the President of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the Electoral College." *Bush v. Gore*, 531 U.S. 98, 104, 121 S. Ct. 525, 148 L. Ed. 2d 388 (2000) (citing U.S. CONST., Art. II, § 1). This is so because "[t]he electoral college was designed by men who did not want the election of the President to be left to the people."

*Gray v. Sanders*, 372 U.S. 368, 376 n.8, 83 S. Ct. 801, 9 L. Ed. 2d 821 (1963) (citation omitted). Only citizens living in states (and in the District of Columbia) have the right to vote for president.

▮▮ The Court understands that Goodwin is challenging this status quo, and the Court does not wish to appear to be dismissive of the very real and troubling problem of Americans living in Territories being denied the right to vote in national elections and have representation in the United States Senate.[22] But Goodwin assumes, and asks the Court to accept as true, what he, as the plaintiff, has the burden of proving. It goes without fear of contradiction, that America has historically (and even currently) denied its people their rights and privileges, including the right to vote, based on their race or ethnicity. However, this fact is but a cog in the wheel to obtain justice and the result Goodwin wishes to achieve. The Court applauds the efforts of Goodwin. But, unfortunately, believing that something is wrong or unjust, without more, is just not enough to prevail in a court of law. Courts can only afford relief on cognizable claims and then, only if the evidence admitted supports those claims. Here, Goodwin's complaint however well-intentioned, and even after amendment, suffers from fatal flaws, leaving this Court no other alternative than to dismiss. This is a complex and intricate issue that has its roots firmly entrenched in American History, and thus, to truly give it justice, the matter cannot be handled summarily.

## CONCLUSION

For the reasons stated above, Goodwin's motion for declaratory judgment must be denied, and defendant's motion granted. An appropriate order will issue resolving both motions and amending the caption in accordance with this opinion.

---

[22] In fact, Virgin Islanders so cherish their right to vote that election day is a public holiday in this Territory. *See* 18 V.I.C. § 3(a).